## Commonwealth *v.* Bowers, Appellant.

Argued November 15, 1956. Before RHODES, P. J.,
HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR,
JJ.

*Joseph J. Laws,* with him *Thomas H. Lane,* and *Lane & Laws,* for appellant.

*William H. Saye,* Assistant District Attorney, with him *Huette F. Dowling,* District Attorney, for appellee.

OPINION BY HIRT, J., December 28, 1956:

The defendant has appealed from the refusal of a new trial following his conviction of statutory rape, the felony defined by §721 of the Act of June 24, 1939, P. L. 872, 18 PS §4721. The girl involved was Mary Eleanor Crews, 14 years of age who lived with her mother and her stepfather, the defendant. In the late morning of August 8, 1955, the child was taken to Harrisburg from their home in Hummelstown by the defendant in his car. The purpose of the trip was to have the child's eyes examined by an oculist. The doctor was unable to see the child then but made an appointment for a later date. Instead of returning to Hummelstown the defendant drove his Mercury Station Wagon to Harrisburg's Wildwood Park and parked the car off the main highway on a narrow dirt road. Charles R. Anderson, a park policeman, went to the car on foot to find out why the automobile was parked there. He testified that when he came up to the car he observed the defendant in the act of sexual intercourse with the child on the front seat of the automobile. When taken to the police station with her stepfather, during the noon hour on the above date, the child accused the defendant of the commission of the offense. What she said in her voluntary statement was reduced to writing by a typist in the presence of the defendant. In sordid detail the girl, in this statement, recited her struggle with the defendant on this occasion in an unsuccessful effort to prevent him from

having carnal connection with her. In her statement she also charged him with having similarly abused her on three prior occasions, and recited the circumstances of each of them in much detail. She also referred to threats by the defendant with a knife, and slapping on other occasions, to induce her to submit. The statement was signed by the girl in the presence of the defendant and was witnessed by three police officers who were present. The signed statement has the air of spontaneity and of truth. Immediately after defendant's arrest his wife and stepdaughter separated from him but returned to his home shortly thereafter and continued to live there with him up to the time of defendant's trial five months later.

At the trial, defendant's counsel on objecting to the testimony of a detective, as to admissions made by the defendant, in effect demanded that the district attorney call the Crews girl as a witness for the Commonwealth. What we said in *Commonwealth v. Sarkis,* 164 Pa. Superior Ct. 194, 199, 63 A. 2d 360, therefore is particularly pertinent here: "Though it may be that the district attorney is not *required* by a rule of law to call the victim, who is, of course, an eye witness, yet normally all eye witnesses should be called. Therefore, if, without calling the victim the prosecution's case would be seriously damaged, or justice would not be done to the defendant, the Commonwealth is fairly bound and driven to call him, and if he prove hostile, his prior statements may be shown so that the Commonwealth may not be bound by his testimony."

When the Crews girl was called by the Commonwealth on the trial of the defendant, she repudiated her statement of August 8, 1955, and testified that "nothing happened between her and Mr. Bowers." Thereupon the district attorney pleaded surprise and

the court allowed him to cross-examine the girl. This action of the court in allowing the Commonwealth thus to impeach the witness is the sole error alleged in the order of the court in refusing a new trial.

In general, where a party is surprised in the testimony of a witness who has unexpectedly turned hostile, counsel may exercise the right of cross-examination of the witness or impeach his testimony by other witnesses. "Whether such practice will be permitted is within the sound discretion of the court, and its action will not be reviewed [on appeal] by this court unless there is an abuse of that discretion": *Commonwealth v. Reeves*, 267 Pa. 361, 363, 110 A. 158. *Commonwealth v. Turza*, 340 Pa. 128, 137, 16 A. 2d 401; *Commonwealth v. Lehman*, 309 Pa. 486, 497, 498, 164 A. 526; *Commonwealth v. Delfino*, 259 Pa. 272, 276, 102 A. 949; *Commonwealth v. Spardute*, 278 Pa. 37, 44, 122 A. 161.

The defendant, conceding the general rule to be as above stated, argues that the court abused its discretion in this instance because the district attorney had been "advised through defense counsel over the several months before the trial that Mary Crews had denied the truth of her written statement". The girl also stated to the district attorney on the morning of the trial "that the facts in her statement were not true." With this advance notice to the district attorney it is contended that the Commonwealth was not actually surprised by the change of front by this Commonwealth witness, and that the action of the lower court therefore in permitting cross-examination of her was reversible error. That certainly is not the law—a defendant cannot so easily prevent the Commonwealth from using the evidence of a voluntary incriminating statement for every purpose by the simple expedient of

notice by his counsel to the Commonwealth of the changed story of a recalcitrant witness before trial. The cross-examination in this case was proper since the Commonwealth was actually surprised (*Selden, Admr. v. Metropolitan Life Ins. Co.,* 157 Pa. Superior Ct. 500, 43 A. 2d 571) when the witness repudiated her prior statement. The written statement had not been sworn to and the Commonwealth was entirely justified in believing that, when the Crews girl should qualify, by being sworn as a witness for the Commonwealth at the trial of the defendant, she would respect the sanctity of her oath, and that her testimony in all probability would accord with the recitals of her statement freely given immediately after the event.

In *Wheeler v. United States,* 211 F. 2d 19, 25, on facts almost identical with those of the instant case, this discussion appears in the opinion of the United States Court of Appeals, District of Columbia Circuit: "Maintaining that the prosecution was not 'taken by surprise,' appellant argues that, under the [applicable] statute, the court was precluded from permitting cross-examination and impeachment of the child. The statute merely codifies the established rule concerning the impeachment of one's own witness [in entire accord also with the Pennsylvania rule][1] and allows ample

---

[1] Our conclusion to this effect is something more than mere dicta in this appeal. Mary Crews appeared at the preliminary hearing and was interrogated by the committing magistrate. He testified: "I asked her whether or not this man had anything to do with her and she said, 'Yes'. I asked her whether he pulled up her dress and whether he opened up his trousers and got on top of her and she said, 'Yes'. I then asked no further questions." On questioning by her mother she testified to penetration by the defendant.

The record however is silent on the question whether the girl appeared and testified before the grand jury.

latitude for application of a broad concept of 'surprise' by requiring only that 'the court shall be satisfied' that 'surprise' exists. In terms of our review, this means that the trial court's ruling on 'surprise' may not be disturbed unless it plainly appears that the ruling is without any rational basis. The child's unequivocal statement to the police on the heels of the alleged event was made before opportunity for reflection and was confirmed by her testimony under oath before the grand jury [in the instant case at the preliminary hearing] after opportunity for reflection. The later and contradictory statement . . ., was made after she and her mother, who had ceased living with appellant after the alleged assault, resumed living with him and were subject to his influence. From these circumstances, we do not think it was incumbent upon the prosecution to believe that once the child was placed under oath on the witness stand and removed from the influence of the accused, she would contradict both her first statement, given immediately after the alleged crime, and her subsequent testimony before the grand jury. The prosecution could reasonably have expected the threatened contradiction to dissolve in the atmosphere of the witness stand. Thus, when it did not dissolve, there was a rational basis for the trial court's being satisfied that the prosecution had 'been taken by surprise' within the meaning of the statute." Certiorari to the Supreme Court of the United States was denied in the *Wheeler* case at 347 U. S. 1019. We are in entire accord with the above discussion as a correct statement of the law of this State also, under circumstances such as in the instant case where the error alleged is that the Commonwealth was not surprised.

In the clearest of language which could not have been misunderstood the jury were instructed by Judge

KRIEDER, to the effect that the written statement signed by the girl is not proof of the guilt of the defendant but that as evidence "It goes merely to the question of whether Mary Crews was telling the truth from this witness stand, in your presence, when she said that the defendant Bowers had no sexual relations with her at all." Elsewhere the jury had been instructed that they were not to consider "the testimony of Mary Crews, on cross-examination, or any prior contradictory statements that are alleged to have been made by her as substantive or independent evidence in aid of the Commonwealth's case, but only for the purpose of neutralizing the effect of the testimony given by Mary Crews to which the Commonwealth pleaded surprise." A number of other rulings to the same effect appear throughout the record.

With the written statement of Mary Crews and her testimony at the trial neutralized, there still remained sufficient competent proof in the testimony of the eye witness Charles R. Anderson coupled with the evidence of defendant's admission of guilt to support the verdict of guilt beyond all reasonable doubt.

Judgment of sentence affirmed and it is ordered that the defendant appear at the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part thereof, which had not been performed at the time the appeal in this case was made a supersedeas.