378 A.2d 330

**COMMONWEALTH of Pennsylvania**

v.

**Frank FILER, Appellant.**

Superior Court of Pennsylvania.

Argued June 21, 1976.

Decided Oct. 6, 1977.

Mitchell S. Lipschutz, Philadelphia, for appellant.

John M. DiDonato, Assistant District Attorney, Philadelphia, with him F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge and HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

WATKINS, President Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Trial Division, of Philadelphia County, after conviction of rape, simple assault and aggravated assault in a jury trial; and from the denial of post-trial motions. The appellant was sentenced to a term of ten to twenty (10–20) years in prison.

The facts as set forth in the lower court's opinion are as follows:

A house party on Bridle Road in Philadelphia in March of 1975 provided the setting for the actions leading to the instant prosecution. Testimony showed that Charmaine Reardon arrived at the scene in the company of her boyfriend, Arthur Taber. Their arrival was preceded by that of Susan McGee who was accompanied by defendant. Also present were approximately a dozen other persons. Following a period of socializing and imbibing, Taber indicated to Reardon that he wanted to leave, that defendant and Joseph Donahue, both of whom were then behind the bar, were planning something. Taber who was upset was summoned to the bar by defendant and Donahue and, when Reardon followed, defendant grabbed her by the waist and threw her onto the bar. Reardon agreed to leave after another drink and accompanied Susan McGee to the bathroom. When she returned alone, a fight had commenced and she was unable to find either Taber or McGee. She ran from the house onto the lawn where Donahue grabbed her, threw her to the ground, started punching her, and pulled down her clothing and then his own. McGee and defendant arrived on the scene and Donahue desisted in his efforts. Defendant accompanied Reardon to the bathroom purportedly to enable the latter to get cleaned up following the attack. Once therein, defendant grabbed Reardon and threw her to the floor and punched her, stating a longtime desire to have intercourse with her. The terror continued behind the closed door as defendant pulled down Reardon's clothing and then his own and twice had intercourse with her. At the conclusion of the attack he threatened her if she should mention the occurrence. Subsequently, she and several other persons, including the defendant, left the Bridle Road address. She went to Taber's apartment and, finding Taber not home, stayed at the apartment of friends, later phoning police.

The appellant complains that the trial court erred in permitting the Commonwealth to plead surprise and cross examine its own witness.

A statement had been given to the police by Susan McGee, which related that following the attack on the victim by Donahue, the defendant had taken the victim into the bathroom and when the witness sought to accompany her, the defendant pushed her out and locked the door. When the victim came out she told McGee that she had been raped by the defendant. The victim was prevented from using the telephone. Prior to trial, McGee informed the District Attorney that she intended to recant her statement. At trial she recanted her statement whereupon the District Attorney pled surprise and was allowed to cross examine the witness.

The contention of the defendant is that the Commonwealth was not surprised as notice had been given by the witness of her change in testimony. However, in *Commonwealth v. Bowers*, 182 Pa.Super. 628, 127 A.2d 806 (1956), this Court was faced with an identical factual situation where an eye witness gave police a statement and prior to trial defense counsel informed the District Attorney that the witness would repudiate the statement and testify differently. This Court stated 182 Pa.Super. at page 632, 127 A.2d at page 808:

"With this advance notice to the district attorney it is contended that the Commonwealth was not actually surprised by the change of front by this Commonwealth witness, and that the action of the lower court therefore in permitting cross-examination of her was reversible error. That certainly is not the law—a defendant cannot so easily prevent the Commonwealth from using the evidence of a voluntary incriminating statement for every purpose by the simple expedient of notice by his counsel to the Commonwealth of the changed story of a recalcitrant witness before trial. . . . The written statement had not been sworn to and the Commonwealth was entirely justified in believing that, when the Crews girl should qualify, by being sworn as a witness for the Commonwealth at the trial of the defendant, she would respect the sanctity of her oath, and that her testimony in all proba-

bility would accord with the recitals of her statement freely given immediately after the event."

The District Attorney was legitimately surprised.

The defendant relies heavily on *Commonwealth v. Turner*, 389 Pa. 239, 133 A.2d 187 (1957). In that case there had been four trials and a co-defendant had originally given a statement to the District Attorney which he repudiated under oath at the fourth trial. Prior to the fifth trial, a sworn affidavit was given to the District Attorney in which he recanted any statements ever made to the District Attorney. Under these circumstances, the Supreme Court held it to be error when the Commonwealth pled surprise after calling the witness to testify.

In the instant case, the witness never repudiated, under oath, her original statement. The District Attorney only had verbal assurances from the witness that she would recant. As the court below said:

"The District Attorney could reasonably have expected the recalcitrance of the witness to dissolve upon being called to the witness stand under oath and, when this did not happen, the Court found that the District Attorney was taken by surprise."

The general rule in this country has long been that a party cannot impeach his own witness. However, the rule has been under attack as indicated in *Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875 (1976). However, the court in the instant case did not abuse his discretion in allowing the District Attorney to cross examine the witness under the general rule. *Commonwealth v. Bowers, supra.*

The defendant further contends that it was error to permit the victim to relate certain activities of the people at the party prior to the rape. The District Attorney during direct examination was attempting to discover why the victim wanted to leave the party. In reply to his question she answered: "Because Arthur Taber said they were planning something." This was objected to and was stricken by the court. The court permitted the victim to testify as to what took place as follows:

"Q. Without telling us what the statement was, when he made that statement was he referring to any people in the basement?

"A. Yes.

"Q. How do you know what people he was referring to?

"A. Because he pointed them out.

"Q. The people that he pointed out, where were they and what were they doing when he made this statement?

"A. They were behind the bar. Frank Filer, the defendant, (and) Joseph Donahue.

"Q. Anybody else?

"A. There were other gentlemen but I don't remember their names.

"Q. How many people were behind the bar?

"A. I counted two, which was Joseph Donahue and Frank Filer.

"Q. There were no other people behind the bar?

"A. I don't recall.

"Q. All right. And what were they doing behind the bar when this statement was made to you?

"A. They were pointing to us and kept watching."

The defendant contends that this testimony as to her observations reinstated the damage caused by the excluded hearsay testimony. The Commonwealth claims that the statement itself could have been properly admitted to show the victim's state of mind at the time. The general rule is stated in *Wigmore on Evidence*, § 1759, page 235 (Third Ed.):

"Wherever an utterance is offered to evidence the state of mind which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible so far as the Hearsay rule is concerned."

See also, *Commonwealth v. Wright*, 455 Pa. 480, 317 A.2d 271 (1974).

Even if the admission was questionable, it could only be harmless error. No request was made for cautionary instructions. *Commonwealth v. Palmer*, 463 Pa. 26, 342 A.2d 387 (1975). *Commonwealth v. Phillips*, 183 Pa.Super. 377, 132 A.2d 733 (1974).

■ At trial the Commonwealth called an expert witness from the police laboratory who testified that a towel found in the bathroom where the victim claimed she was raped was positive for seminal stains. The defendant contends that this was error as the towel was found 24 hours after the rape and was too remote. The Commonwealth presented testimony that the owner of the house had placed a clean towel in the bathroom before the party. The victim testified she was raped in the bathroom. The towel was discovered in the bathroom the day after the alleged incident. This was sufficient foundation for the trial judge to exercise his discretion in the admission of this evidence. The circumstances are sufficient to justify an inference by the jury and its remoteness goes to the weight of the evidence. *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). See also, *Commonwealth v. Magnus*, 229 Pa.Super. 29, 323 A.2d 398 (1974).

Judgment of sentence affirmed.

JACOBS, J., absent.

HOFFMAN and SPAETH, JJ., concur in the result.