737 A.2d 1188

COMMONWEALTH of Pennsylvania, Appellee,

v.

Robert DOUGLAS, Appellant.

Supreme Court of Pennsylvania.

Argued Feb. 2, 1999.

Decided July 27, 1999.

Reargument Denied Sept. 15, 1999.

414

418

John T. Drost, for Robert Douglas.

Catherine Marshall, Philadelphia, for the Com.

Anthony V. Pomeranz, Philadelphia, Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

NEWMAN, Justice.

## I. FACTUAL AND PROCEDURAL HISTORY

The evidence at trial established that on August 28, 1980, at approximately 3:00 a.m., Michael McLaurin (McLaurin) and Donald Knight (Knight) were sitting on a bench in the courtyard of the Raymond Rosen Housing Project in Philadelphia when Robert Douglas (Douglas) approached the two men and asked for money. The three men had been friends for ten years. McLaurin and Knight responded that they did not have any money, and Douglas departed. A short time after that Douglas returned with a small caliber semiautomatic pistol and shot Knight twice, killing him. He also shot McLaurin twice, in the upper and lower arm.

Officers Pressley and Jones were on patrol in the immediate vicinity. They heard shots and saw McLaurin running. When McLaurin flagged them down, he said he and Knight

had been shot and told them about the shooting. McLaurin was seated in the back of the police wagon and they drove one block to where Knight lay dying. At about 3:07 a.m., Officer Riley arrived and took McLaurin to Temple University Hospital in a police car, and McLaurin described the shooting and named Douglas as the shooter. McLaurin also gave Officer Riley the address of Douglas. While still at the hospital, two hours later, McLaurin also identified a photograph of Douglas, from an array of photographs, and said he was the man who shot Knight and him.

Although the police had the address of Douglas, they could not find him there. They encountered Douglas on three occasions, and he managed to escape each time, because he threatened them with a weapon, once a sawed off shotgun or a small caliber semiautomatic handgun he carried in his back pocket. Finally the police apprehended and arrested Douglas approximately one year later, on July 26, 1981.

Knight's mother also identified Douglas. She testified that four days after Knight was buried, she saw Douglas on her way to the store. He told her, while he was laughing at her, that he had killed her son and she was going to be next.

The Commonwealth also presented testimony of Richard Pierce, who sent a letter to the District Attorney, which stated that he witnessed Douglas shoot Knight. On the witness stand, Pierce denied seeing the shooting.

A jury tried Douglas. Although McLaurin appeared and testified at the preliminary hearing of Douglas, he did not appear for trial. The Commonwealth made numerous attempts to locate McLaurin, but he could not be found. There are allegations that he was in fear from threats and that he was hiding. The trial court eventually held that McLaurin was "unavailable," and therefore allowed the Commonwealth to read his preliminary hearing testimony into the record. Besides this, the Commonwealth presented evidence that Douglas admitted to Knight's mother that he had killed her son and threatened to kill her. The Commonwealth also presented the photographic identification of Douglas on the

morning of the crime and the repeated flights of Douglas from uniformed police officers. On January 20, 1983, the jury convicted Douglas of first degree murder,[1] aggravated assault,[2] and possessing an instrument of crime.[3] In the penalty phase, on January 21, 1983, the jury found two aggravating circumstances, that Douglas had a significant history of violent felony convictions,[4] and that in the commission of the murder Douglas knowingly created a grave risk of death to another person.[5] The jury found no mitigating circumstances, and on January 23, 1983, the jury sentenced Douglas to death.

Douglas filed post-trial motions. His trial counsel was permitted to withdraw, and new counsel filed supplemental post-trial motions, including allegations of ineffective assistance of trial counsel. Following a hearing, the trial court granted Douglas' request for a new trial based on ineffective assistance of counsel; the court did not address other issues raised by Douglas. The grant of a new trial was based solely on a claim alleging that trial counsel was ineffective for extracting from a defense witness that Douglas had a prior criminal record. The Commonwealth appealed to the Superior Court, which reversed the grant of a new trial. Douglas then appealed that decision to this Court, which affirmed and remanded to the trial court for consideration of the issues raised but not decided in Douglas' post-trial motions. *Commonwealth v. Douglas*, 537 Pa. 588, 645 A.2d 226 (1994). The trial court held a hearing and denied the remainder of the post trial motions of Douglas, and this appeal followed.

## II.  *ISSUES ON APPEAL*

Douglas raises the following issues for our consideration:[6]

1.  18 Pa.C.S. § 2502(a).
2.  18 Pa.C.S. § 2709.
3.  18 Pa.C.S. § 907.
4.  42 Pa.C.S. § 9711(d)(9).
5.  42 Pa.C.S. § 9711(d)(7).
6.  Pursuant to *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327

1. Whether the trial court erred in allowing the introduction of a statement given by McLaurin while on the way to the hospital.

2. Whether the trial court erred in permitting two detectives to testify that McLaurin identified a photograph of Douglas.

3. Whether the trial court erred in declaring McLaurin unavailable to testify at trial.

4. Whether the trial court erred in permitting the Commonwealth to introduce the testimony of McLaurin at the preliminary hearing.

5. Whether the trial court erred in failing to sustain objections to comments made by the prosecutor during the penalty hearing.

6. Whether Douglas is entitled to a new trial because of after discovered evidence.

7. Whether the trial court erred in allowing the Commonwealth to plead surprise and cross-examine a witness regarding a prior inconsistent statement.

8. Whether trial counsel was ineffective:

   a. For calling Detective Permint as a witness.

   b. For failing to request a cautionary instruction regarding Douglas' drug involvement.

   c. For failing to object to several comments in the prosecutor's closing.

   d. For failing to object to the charge to the jury regarding the Commonwealth's burden.

   e. For failing to request a jury instruction with respect to the crimen falsi convictions of two witnesses.

   f. For failing to object when the prosecutor elicited testimony that Douglas had myriad arrests.

(1983), this Court is required to conduct an independent review of the sufficiency of the evidence supporting a first-degree murder conviction in all capital cases. Here, we find that the evidence is sufficient to show that Douglas shot Knight in a vital part of his body, which leads to an inference that Douglas had the specific intent to kill Knight. Thus, the evidence in this case is sufficient to support the conviction of first-degree murder.

g. For failing to object to several improper comments made by the prosecutor during the penalty hearing.

h. For not properly interviewing the expert witnesses who testified at the penalty hearing of Douglas.

I. For failing to object to testimony regarding the efforts made to find a witness who had already been declared unavailable.

## III. *DISCUSSION*

### A. *Introduction of the Statement of McLaurin*

[1] Douglas first argues that the trial court should not have allowed the Commonwealth to introduce into evidence the statement given by McLaurin while he was being transported to the hospital after being shot. According to Douglas, that statement was hearsay and was not admissible under any exception to the hearsay rule, including the excited utterance exception. We disagree.

For a statement to be admissible as an excited utterance it must be:

a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.... Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event.

*Commonwealth v. Stokes*, 532 Pa. 242, 615 A.2d 704, 712 (1992) (quoting *Commonwealth v. Green*, 487 Pa. 322, 326–27, 409 A.2d 371, 373–74 (1979)). Here, McLaurin gave his statement only eleven minutes after witnessing the shooting of Knight and being shot himself. This Court has often held that

declarations made in similar circumstances are admissible as excited utterances. *See, e.g., Commonwealth v. Washington,* 547 Pa. 550, 692 A.2d 1018, 1022 (1997), *cert. denied,* 523 U.S. 1123, 118 S.Ct. 1806, 140 L.Ed.2d 945 (1998); *Commonwealth v. Thompson,* 538 Pa. 297, 648 A.2d 315, 324 (1994); *Commonwealth v. Penn,* 497 Pa. 232, 439 A.2d 1154, 1159 (1982), *cert. denied,* 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982); *Commonwealth v. Cooley,* 465 Pa. 35, 348 A.2d 103, 107 (1975). We cannot conclude that the trial court abused its discretion in admitting the statement of McLaurin as an excited utterance; accordingly, no relief is due. *See Commonwealth v. Lester,* 554 Pa. 644, 722 A.2d 997, 1003 (1998) (citing *Commonwealth v. Bronshtein,* 547 Pa. 460, 480, 691 A.2d 907, 916 (1997)) ("The admissibility of evidence is a matter which lies within the discretion of the trial court, and, absent an abuse of discretion, the trial court's decision will not be disturbed.")

### B. *Introduction of McLaurin's Photo Identification*

■ Douglas next argues that the trial court erred in allowing two police officers to testify that McLaurin identified Douglas from a photo array approximately two hours after the shooting because their testimony constituted hearsay that was not admissible under any exception to the hearsay rule. Douglas is mistaken. "It is well-established that certain out-of-court statements offered to explain the course of police conduct are admissible on the basis that they are offered not for the truth of the matter asserted, but rather to show the information upon which the police acted." *Commonwealth v. Hamilton,* 543 Pa. 612, 673 A.2d 915, 918 (1996) (citing *Commonwealth v. Jones,* 540 Pa. 442, 451–52, 658 A.2d 746, 751 (1995); *Commonwealth v. Yates,* 531 Pa. 373, 375–76, 613 A.2d 542, 543 (1992); *Commonwealth v. Palsa,* 521 Pa. 113, 117, 555 A.2d 808, 810 (1989)). Here, the identification by McLaurin of Douglas' photograph was not offered to prove that Douglas was the shooter, but rather to establish the information on which the police secured an arrest warrant for Douglas. Indeed, McLaurin identified Douglas as the shooter and gave the police Douglas' name and address *before* seeing any photo-

graphs. Therefore, the admission of the officers' testimony regarding the photo identification was not erroneous.

## C. *The Unavailability of McLaurin*

■ Next, Douglas argues that the trial court erred in finding McLaurin unavailable to testify at trial, which provided a basis on which to introduce McLaurin's preliminary hearing testimony. According to Douglas, the Commonwealth did not make a good faith effort to locate McLaurin because, *inter alia*, the police did not set up surveillance inside the housing project where McLaurin lived. This argument has no merit. It is within the discretion of the trial court to determine what constitutes a good faith effort to locate a missing witness, and the decision of the court will not be overturned absent an abuse of discretion. *See, e.g., Commonwealth v. Wayne*, 553 Pa. 614, 720 A.2d 456 (1998); *Commonwealth v. Jackson*, 463 Pa. 301, 344 A.2d 842 (1975). Here, the trial court found that the Commonwealth had made a good faith effort based on the testimony of several police officers who testified to various measures they undertook to find McLaurin, including repeatedly searching at his apartment, at his mother's apartment, at a number of bars he was known to frequent, at his girlfriend's house, and elsewhere. The police also contacted McLaurin's mother, his sister, his girlfriend, his neighbors, the security officers at the housing project, and others to try to find McLaurin, all to no avail. Notwithstanding the lack of surveillance at the housing project, we cannot conclude that the trial court abused its discretion in finding that the Commonwealth made a good faith effort to locate McLaurin. Consequently, no relief is due.

## D. *Introduction of McLaurin's Preliminary Hearing Testimony*

■ Douglas next contends that the trial court should not have allowed the Commonwealth to introduce into evidence McLaurin's preliminary hearing testimony because the defense did not have a full and fair opportunity to cross-examine McLaurin at the preliminary hearing. This claim fails.

■ The prior recorded testimony of a witness who is unavailable at trial may be admitted into evidence as long as the defendant has had a full and fair opportunity to cross-examine the witness. *See, e.g., Commonwealth v. Thompson,* 538 Pa. 297, 648 A.2d 315, 322 (1994). In this case, the following exchange took place during McLaurin's testimony at the preliminary hearing:

> Defense Attorney: Now, you're presently in custody, is that correct?
>
> McLaurin: Yes.
>
> Defense Attorney: For what?
>
> Prosecutor: Objection.
>
> Defense Attorney: Well, are you awaiting trial or have you been sentenced?
>
> Court: As to whether he's presently in custody, the objection is sustained.
>
> Defense Attorney: I'll get it on discovery anyhow.

N.T., 1/17/83, at 378. Douglas argues that the sustaining of the prosecutor's objection denied the defense a full and fair opportunity to cross-examine McLaurin regarding burglary and theft charges pending against him, and therefore the testimony of McLaurin should not have been admitted at trial. It is clear from the record, however, that the court sustained the prosecutor's objection only as to whether McLaurin was in custody at the time of his testimony. Neither the court nor the Commonwealth precluded the defense from cross-examining McLaurin regarding the charges pending against him; rather, Douglas' attorney simply chose not to pursue that line of questioning. That Douglas' attorney did not avail himself of the opportunity to cross-examine McLaurin is of no moment and warrants no relief.

### E. *The Closing Argument of the Prosecutor in the Penalty Phase*

■ Douglas next argues that trial court erred in failing to sustain objections to certain portions of the prosecutor's penalty phase closing argument. To warrant relief on such claims,

Douglas must show that "the prosecutor has 'deliberately attempted to destroy the objectivity of the fact finder' such that the 'unavoidable effect' of the inappropriate comments would be to create such bias and hostility toward the defendant that the jury could not render a true verdict." *Commonwealth v. Miles*, 545 Pa. 500, 511, 681 A.2d 1295, 1300 (1996), *cert. denied*, 520 U.S. 1187, 117 S.Ct. 1472, 137 L.Ed.2d 684 (1997) (quoting *Commonwealth v. Carpenter*, 511 Pa. 429, 439, 515 A.2d 531, 536 (1986)).

■ First, Douglas argues that the following comment was improper and mandates a new penalty hearing:

> We have been here now three or four weeks and not one single individual has appeared on his behalf. And you have got to admit that is rather strange, though maybe it is not if you look back on his criminal record. He has been arrested 19 times in the last eight years. They may have said, "Look, I've been down to City Hall so many times for that guy I don't want to go down anymore."

N.T. 1/21/83, at 862. Douglas argues that, such comments could only have served to divert the jury from deciding what penalty to impose based on an objective assessment of the evidence,: but we cannot conclude that the comment was so prejudicial as to prevent the jury from rendering a true verdict. Therefore, no relief is warranted with respect to this comment.

■ Douglas also argues that the prosecutor engaged in misconduct in making the following argument:

> Ladies and gentlemen, follow your oath and let your conscience be your guide. But I will say, in all sincerity, that Robert Douglas should just be plain put to death as we put mad dogs out of their misery who break their four legs, because there is nothing else you can do for them. He will always be what he is now.

N.T. 1/21/83, at 869–70. According to Douglas, the prosecutor's comparing Douglas with a "mad dog" was so prejudicial as to require a new penalty hearing. We disagree.

Douglas cannot prevail on his allegation that the prosecutor improperly used animal imagery, interjected his personal opinion, and sought to excite the jury when he argued that Douglas was as beyond rehabilitation as a mad dog. Clearly, our law is otherwise, and this Court has cast aside a per se rule against logical analogies merely because they contain references to animals.

In *Miles,* this Court found proper a prosecutor's argument that likened the defendant and his co-conspirators to "animals of prey . . . There's one that jumps up and snaps the neck of the deer with one bite and another one that jumps up and tears the flesh of the slain off with one bite." *Miles,* 545 Pa. at 513–14, 681 A.2d at 1302.

> Our Court has held that as long as there is a reasonable basis in the record for the comments, we will permit vigorous prosecutorial advocacy. For example, in *Commonwealth v. Jones,* 530 Pa. 591, 617, 610 A.2d 931, 943 (1992) we upheld a prosecutor's comments that defendants were a "murdering, child-killing, backshooting" trio, "slaughterers" and "executioners" because the comments were reasonably based upon the evidence produced at trial. Further, we will only reverse the trial court if the unavoidable effect of the prosecutor's comments is to create hostility toward the defendant such that the jury is hindered in its job of objectively weighing the evidence. *Commonwealth v. Hill,* 542 Pa. 291, 666 A.2d 642 (1995).

*Id.*

Moreover, this was the penalty phase of the trial, and the prosecutor did not give a personal opinion of guilt as in *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974). In *Lipscomb,* before the jury found the defendant guilty, the prosecutor had called the accused an "animal," but he had offered a personal opinion concerning his guilt. In this case, the jury had convicted Douglas of a murder and an aggravated assault, and had heard evidence that on other occasions Douglas had savagely pistol-whipped or stabbed other people. Therefore, *Lipscomb* does not support Douglas' allegation that the prosecutor gave his "personal opinion" when he used an

animal analogy to argue, from the evidence, that Douglas is incorrigible. At the penalty phase, direct arguments that the death penalty is appropriate do not constitute an expression of "personal opinion." *See Commonwealth v. Lester, supra,* (the prosecutor did not express his personal opinion where he told the jury that life was not an appropriate penalty for appellant's crimes). Last, Douglas argues that the prosecutor's remark inflamed the jury, but we cannot conclude that the prosecutor's characterization of Appellant as a "mad dog" inflamed the jury to such a degree as to destroy its ability to weigh the evidence objectively. *Cf. Miles; Commonwealth v. Jones,* 530 Pa. 591, 610 A.2d 931 (1992). Thus, we grant no relief.

## F. *After Discovered Evidence Claim*

Next, Douglas claims that he is entitled to a new trial to consider McLaurin's affidavit of February 18, 1993, in which McLaurin alleges that he falsely accused Douglas of shooting him and killing Knight. After discovered evidence merits a new trial only where four prongs are met: (1) the evidence was discovered after trial and could not have been obtained at or before trial by the exercise of reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely to impeach the credibility of a witness; and (4) the evidence is of such a nature and character that a different verdict would likely result if a new trial is granted. *See, e.g., Commonwealth v. Wilson,* 538 Pa. 485, 649 A.2d 435, 448 (1994), *cert. denied,* 516 U.S. 850, 116 S.Ct. 145, 133 L.Ed.2d 91 (1995). The kind of evidence at issue here, a recantation and admission of perjury, has often been recognized as one of the least reliable forms of after discovered evidence. *See, e.g., Commonwealth v. McNeil,* 506 Pa. 607, 617 n. 4, 487 A.2d 802, 807 n. 4 (1985); *Commonwealth v. Anderson,* 466 Pa. 339, 342, 353 A.2d 384, 386. Indeed, the veracity of McLaurin's affidavit is especially doubtful. In it, McLaurin alleges that while he was at the hospital, the police pressured him to name Douglas as the shooter. However, McLaurin overlooks the fact that he had

*already* named Douglas as the shooter immediately after flagging down the police near the scene. This glaring inconsistency, as well as the other evidence against Douglas, makes it highly unlikely that the outcome of a new trial would be different. Therefore, no relief is due.

### G. *Cross-examination of Richard Pierce*

On April 27, 1982, Richard Pierce, who was then incarcerated at SCI Huntingdon, wrote a letter to the Philadelphia District Attorney's Office in which he claimed to have seen Douglas shoot Knight. Pierce subsequently met with the prosecutor and police and gave two statements identifying Douglas as the killer. Immediately before trial, however, Pierce changed his story and informed the prosecutor that he would disavow his prior statements when called to testify.

At trial, before calling Pierce to the witness stand, the prosecutor requested a sidebar conference and informed the court that Pierce had unexpectedly changed his story. The prosecutor requested permission to cross-examine Pierce concerning his 1982 letter and statements, and the court granted that request. Douglas argues that the decision of the trial court to allow the Commonwealth to cross-examine Pierce was erroneous. This argument lacks merit.

Where a party is surprised by a change in its own witness' testimony, the court may allow the party to cross-examine the witness if the trial testimony: (1) is unexpected; (2) contradicts the witness' earlier statements; and (3) is harmful to the party's case. *See Commonwealth v. Chambers*, 546 Pa. 370, 685 A.2d 96, 109 (1996), *cert. denied*, 522 U.S. 827, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997) (citing *Commonwealth v. Smith*, 511 Pa. 343, 353, 513 A.2d 1371, 1376 (1986), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987)). This case satisfies all three prongs: (1) the Commonwealth did not know until shortly before trial that Pierce intended to change his story; *see Commonwealth v. Filer*, 249 Pa.Super. 349, 378 A.2d 330 (1977); *Commonwealth v. Bowers*, 182 Pa.Super. 628, 127 A.2d 806 (1956); (2) Pierce's testimony

432

denying that he witnessed Douglas shoot Knight directly contradicted his prior statements; and (3) Pierce's changing his testimony was detrimental to the Commonwealth's case. *See Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). Accordingly, no relief is due.

## H. *Alleged Ineffectiveness of Trial Counsel*

Douglas alleges nine instances of trial counsel's ineffectiveness. To warrant relief on these claims, Douglas must establish: (1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for his or her course of conduct; and (3) that there is a reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different. *Commonwealth v. Jones*, 546 Pa. 161, 175, 683 A.2d 1181, 1188 (1996). Counsel is presumed to be effective and Douglas has the burden of proving otherwise. *Commonwealth v. Marshall*, 534 Pa. 488, 633 A.2d 1100 (1993). Additionally, counsel cannot be considered ineffective for failing to raise a claim that is without merit. *Commonwealth v. Peterkin*, 538 Pa. 455, 649 A.2d 121 (1994), *cert. denied*, 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995).

### 1. *Calling Detective Permint as a witness*

First, Douglas claims that trial counsel was ineffective for calling Detective Permint as a witness and eliciting testimony that Douglas was involved with drugs. According to Douglas, counsel had no reasonable basis for introducing such evidence. We disagree. Counsel called Detective Permint to undermine McLaurin's credibility by pointing out inconsistencies between McLaurin's statements at the scene and his subsequent preliminary hearing testimony. One such inconsistency was McLaurin's statement that when Douglas first approached him, he asked McLaurin to hold a needle, yet the police found no needle at the scene. Trial counsel reasonably chose to call Detective Permint in an effort to discredit McLaurin's testimony. Accordingly, this claim of ineffectiveness fails.

### 2. *Failing to request a cautionary instruction regarding drug involvement*

Next, Douglas argues that trial counsel was ineffective for failing to request a cautionary instruction regarding Douglas' alleged drug involvement, but he fails to demonstrate any prejudice because of counsel's decision not seek such an instruction. Consequently, this claim warrants no relief.

### 3. *Failure to object to the closing argument of the prosecutor in the guilt phase*

Douglas claims that the prosecutor made various improper remarks during his guilt phase closing argument and that trial counsel was ineffective for failing to object to them. However, Douglas does not identify the particular comments that he finds problematic. Instead, he merely describes portions of the prosecutor's closing, gives citations to pages of the notes of testimony, and concludes that, "[t]he remarks were obviously objectionable and caused [Douglas] to suffer prejudice." As we noted in *Commonwealth v. Thomas*, 552 Pa. 621, 717 A.2d 468, 482 (1998), "this type of cursory legal discussion is woefully inadequate." In any event, having reviewed the entire closing argument, we find nothing that would cause the jury to be prejudiced against Douglas such that they could not render a true verdict. *See, e.g., Thomas*, 717 A.2d at 481–83. Accordingly, no relief is due.

### 4. *Failure to object to the burden of proof instruction*

Douglas next contends that trial counsel was ineffective for failing to object to the instruction of the court to the jury that, "if the evidence fails to meet the Commonwealth's burden, then your verdict *should* be not guilty." N.T. 1/19/83, at 654–55 (emphasis added). According to Douglas, the instruction of the court left the jury with the impression that they could find Douglas guilty even if the Commonwealth did not meet its burden of proof. This argument has no merit, because only a few moments after the cited charge, the court went on to instruct the jury that, "if the Commonwealth has not met its burden, then you must find [Douglas] not guilty." N.T. 1/19/83, at 656. Thus, trial counsel had no reasonable

basis to object and Douglas suffered no prejudice because of counsel's failure to object.

### 5. Failing to request crimen falsi instruction

Next, Douglas argues that trial counsel was ineffective for failing to request a jury instruction regarding the crimen falsi convictions of McLaurin and Pierce. However, Douglas does not show that the decision of counsel not to seek such an instruction prejudiced him. Hence, no relief is due.

### 6. Failing to object to introduction of Douglas' arrest record

■ Douglas next argues that trial counsel was ineffective for failing to object when Douglas' probation officer testified during the penalty phase that Douglas had nineteen arrests, nine as an adult and ten as a juvenile. Although Douglas alleges that the introduction of his arrest record prejudiced him, we do not believe that such evidence affected the outcome of the penalty proceedings. First, the jury never heard what the arrests were for, and trial counsel elicited testimony that only four of the nine adult arrests led to convictions. Thus, the suggestion of Douglas that the jury could have used his arrest record to support a finding of aggravating factor (d)(9) (a significant history of violent felony convictions) is untenable. Furthermore, the jury found *two* aggravating circumstances and *no* mitigating circumstances. Therefore, even if the jury's finding of aggravating factor (d)(9) were disregarded, Douglas nevertheless would have been sentenced to death. *See Commonwealth v. Michael,* 544 Pa. 105, 674 A.2d 1044, 1048 ("Where there are no mitigating factors and a finding of at least one aggravating circumstance, the sentencing court has no discretion but to impose the death penalty."). Douglas cannot demonstrate prejudice as a result of counsel's alleged ineffectiveness; hence, no relief is warranted.

### 7. Failure to object to the prosecutor's penalty phase arguments

■ Douglas argues that trial counsel was ineffective for failing to object to various comments made during the prose-

cutor's penalty phase closing argument. First, he alleges that the prosecutor improperly referred to the anticipated future conduct of Douglas in arguing that, "If he is not going to conform his conduct to the requirements of the law, if he is going to be assaultive and violent on the streets as well as in jail, why should he be allowed to live? Why shouldn't he die just like Donald Knight did?" N.T. 1/21/83, at 863. Douglas mischaracterizes this comment as referring to future behavior. In fact, the prosecutor was referring to the past behavior of Douglas, including specific violent felonies that the jury heard about in the penalty phase. See N.T. 1/21/83, at 864 ("You have heard from the three witnesses [Douglas] called, and not one witness would tell you anything, anything, positive he has ever done. Not one positive thing that the defendant has ever done came from any witness who testified on the witness stand. Grabbing a 15–year–old and taking his glasses and watch and stabbing his father. Grabbing Mr. Feldman and pistol-whipping him and taking $400 and his car keys and a high-speed chase through the streets.... "). This claim, therefore, lacks arguable merit.

Next, Douglas complains that the prosecutor focused on the crime of receiving stolen property in his argument concerning aggravating circumstances:

> He worked his way up. Mr. Gay indicated he started off with receiving stolen property, where I told him it was an automobile, and he worked all the way up to the ultimate crime. And he got · there by hard work and dedication. And in fact he has dedicated his life for the last ten years to assaulting and stabbing and shooting and killing and robbing.

N.T. 1/21/83, at 863. It is clear from the record, however, that the prosecutor referred to receiving stolen property only as an introduction to the violent felonies that form the basis for aggravating circumstance (d)(9). This claim, too, lacks arguable merit.

■ Finally, Douglas argues that the prosecutor improperly implied that his family did not care about him because no one testified on behalf of Douglas at the penalty stage:

> Members of the jury, you would think somebody in the family would care. Here he is convicted of murder in the first degree and the Commonwealth is asking that he be put to death. And not a single, single family member, anybody here sitting out in the courtroom. Is it because they don't care? Apparently so.

N.T. 1/21/83, at 863. Douglas alleges that these comments unfairly stigmatized him as unworthy of sympathy, but he fails to demonstrate any prejudice as a result of the comments. Accordingly, no relief is due.

### 8. *Failing to interview experts*

■ Douglas next contends that trial counsel was ineffective for failing to interview two mental health experts, Drs. Lawrence Byrne and Edwin Camiel, both of whom testified during the penalty phase. However, the claim of Douglas is based on pure conjecture—because their trial testimony turned out to be unfavorable to him, Douglas simply assumes that trial counsel did not interview the experts before trial. Lacking any factual support, this claim fails.

### 9. *Failure to object to the testimony regarding efforts to locate McLaurin*

■ Finally, Douglas argues that once the trial court declared McLaurin unavailable, trial counsel was ineffective for failing to object to the introduction of evidence concerning the Commonwealth's efforts to locate McLaurin, but he fails to show how counsel's decision not to object prejudiced him. Thus, no relief is due.[7]

---

7. Pursuant to 42 Pa.C.S. § 9711(h)(3) and *Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426 (1997), we must affirm the judgment of sentence unless we determine that:

> (i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;
> (ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

## IV. CONCLUSION

We have reviewed the claims of Douglas and we have found no merit to them. Accordingly, we affirm his convictions and judgment of sentence.[8]

Justice SAYLOR files a concurring opinion in which Justice ZAPPALA joins.

Justice CAPPY and NIGRO concur in the result.

SAYLOR, Justice, concurring.

I concur in the result reached by the majority, but write separately to address two aspects of the prosecutor's closing argument at sentencing which, in my view, warrant further discussion.

First, I am not as confident as my colleagues that comments made by the prosecutor were both intended and understood to refer to Douglas's past, rather than future, conduct. Such comments include the following:

> Remember Dr. Camiel said ... that the prognosis for the defendant was poor, in fact [it] doesn't matter whether on the street or in jail he is going to act the same way, assaulting people.

> . . .

> If he is not going to conform his conduct to the requirements of the law, if he is going to be assaultive and violent

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

When we review the record, we conclude that the sentence imposed in this case was not the product of passion, prejudice or any other arbitrary factor. It was based on the evidence that Douglas had a significant history of violent felony convictions and that Douglas put McLaurin at risk of death when he shot Knight and McLaurin; and we find that the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases.

8. Pursuant to 42 Pa.C.S. § 9711(i), the Prothonotary is directed to transmit the complete record of this case to the Governor of Pennsylvania within ninety days.

on the streets as well as in jail, why should he be allowed to live?   Why shouldn't he die just like Donald Knight did?

. . .

He will do what he wants to do when he wants to do it and his conduct is not going to change.   Whether he is up in Holmesburg Prison, Dallas, Huntingdon, or on the streets of Philadelphia walking the Raymond Rosen Projects he will always be Robert Douglas.

. . .

Robert Douglas should just be plain put to death, as we put mad dogs out of their misery . . . because there is nothing else you can do for them.   He will always be what he is now.

Although Douglas has specifically challenged only the second of these comments as referring to future conduct, it is axiomatic that the propriety of a prosecutor's remarks must be evaluated by looking at those remarks in context.   *Commonwealth v. Morales*, 549 Pa. 400, 424, 701 A.2d 516, 528 (1997). In my view, the overall thrust of the prosecutor's remarks, which included such unambiguously predictive comments as "the prognosis for the defendant was poor" and "his conduct is not going to change," was to suggest that Douglas would pose a danger to society in the future.

In a procedurally appropriate context, such remarks would entitle a defendant to a "life means life" instruction pursuant to *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).   *See Commonwealth v. Chandler*, 554 Pa. 401, 414–15, 721 A.2d 1040, 1046 (1998) (noting that a *Simmons* instruction was warranted even though the prosecutor did not use the precise phrase "future dangerousness"). However, because Douglas's trial took place in January of 1983, some 11 years before the U.S. Supreme Court's decision in *Simmons*, trial counsel cannot be held ineffective for failing to request a *Simmons* instruction.   Nor did the quoted remarks, in and of themselves, constitute prosecutorial misconduct.   Where, as here, defense counsel broaches the issue of

future dangerousness, it is fair comment for the prosecutor to respond. *Commonwealth v. Griffin,* 537 Pa. 447, 463, 644 A.2d 1167, 1175 (1994). Accordingly, I agree with the majority that this claim does not entitle Douglas to relief.

My second concern is with the prosecutor's comment that Douglas should be put to death like a "mad dog." I realize that there is jurisprudence of this Court affirming a judgment of sentence despite statements by the prosecutor likening the defendant to an animal. Nevertheless, it is my view that such rhetoric has no place in the closing argument in a capital case. Hence, I would prospectively hold that it is *per se* reversible error for the Commonwealth to employ such language. Because, however, I am unable to conclude that the sentence in this case was the product of bias or hostility toward the defendant, I join the majority in affirming the judgment of sentence.

Justice ZAPPALA joins this concurring opinion.