**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Bernard Dean IRWIN, Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 2, 2001.

Filed Feb. 23, 2001.

---

6. *Supra,* at page 4.

Francis J. Schultz, Assistant District Attorney, Meadville, for Commonwealth, appellant.

John W. Rowden, Meadville, for appellee.

Before DEL SOLE, J., CERCONE, President Judge Emeritus, and HESTER, J.

HESTER, Judge:

¶ 1 The Commonwealth appeals from the order granting the motion of Bernard Irwin, Appellee, to suppress evidence resulting from an incident in which he was cited for driving while under the influence of alcohol and for improper use of multiple-beam road lighting equipment. We affirm.

¶ 2 The facts, which are taken from the trial court opinion, are straightforward.

On September 7, 1999 at about 12:55 o'clock a.m. the defendant was driving a van in a southerly direction on Route 19 a few miles southwest of Meadville. As he was proceeding south two state troopers, Troopers Yuran and Mihalich (sic), in a marked State Police car were traveling in a northerly direction, or the opposite direction, and came upon the defendant and started to follow the defendant.

When Trooper Yuran was asked why the police officers turned around to follow the defendant he simply stated that "we follow many vehicles." That answer was not responsive to the question Trooper Yuran was asked. Nonetheless, we do not know the reason the troopers followed the defendant. We can infer that they did not follow him because of any Motor Vehicle Code violation.

These two troopers followed the defendant for four to five miles which was about ten minutes. They observed absolutely no Motor Code violations or any other illegal or suspicious conduct on the part of the defendant.

Eventually a second State Police car pulled up behind Mihalich and Yuran. That police car was occupied by Troopers Funk and Orlosky. That second vehicle, the Funk/Orlosky vehicle, then passed both the Mihalich/Yuran State Police vehicle and the defendant's vehicle and continued in a southerly direction at a speed that was faster than the speed the defendant was going.

As Trooper Funk was proceeding in the same direction as the defendant, in front of the defendant and pulling away from the defendant, he noticed that the defendant was operating with his front high beam lights on. Trooper Funk called by radio to Trooper Yuran and told him that the defendant's high beams were on. At that point the defendant's high beams were of no importance, because the defendant turned right off of Route 19 onto Delano Road. Troopers Yuran and Mihalich turned behind the defendant, pulled him over, asked for identification, etc. and gave the defendant field sobriety tests after which the defendant was placed under arrest for driving under the influence (75 Pa.C.S.A. 3731(a)(1), (4)(i)). He is also charged with improper use of multiple-beam road lighting equipment under 75 Pa.C.S.A. 4306(b).

The defendant filed a motion to suppress all evidence as having been the result of an illegal stop. We agree with the defendant based on a literal view of 75 Pa.C.S.A. 4306(b).

Trial Court Opinion, 5/4/00, at 1–2. On May 16, 2000, the Commonwealth filed this timely appeal.[1]

¶ 3 The Commonwealth's sole issue on appeal is whether the trial court erred in granting Appellee's motion to suppress. We find that it did not and accordingly, affirm. We begin our analysis by stating the governing standard of review:

"Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible." *Commonwealth v. Hamilton*, 543 Pa. 612, 614, 673 A.2d 915, 916 (1996) (citing Pa.R.Crim.P. 323(h)). "In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record." *Id.* Where, as here, the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the Commonwealth and whatever evidence for the defense which is uncontradicted on the record as a whole. *Commonwealth v. Roman*, 714 A.2d 440, 442 (Pa.Super.1998), appeal denied, 556 Pa. 707, 729 A.2d 1128 (1998) (quoting *Commonwealth v. Vasquez*, 703 A.2d 25, 30 (Pa.Super.1997)). "If there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are erroneous." *Id.*

*Commonwealth v. Andersen*, 753 A.2d 1289, 1291 (Pa.Super.2000). Initially, we note the Commonwealth does not challenge the trial court's finding of facts, which are supported by the record. Therefore, our task is to determine whether the legal conclusions drawn from these facts are in error.

¶ 4 The Pennsylvania Supreme Court has stated that police officers may stop a vehicle whenever they have articulable and reasonable grounds to suspect that a violation of the Vehicle Code has occurred. *Id.* at 1293 (quoting *Commonwealth v. Hamilton*, 543 Pa. 612, 618, 673 A.2d 915, 918 (1996)). We find guidance in our Supreme Court's decision in *Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113 (1995). In that case, the defendant was stopped after a trooper observed him cross a solid white line and pass the vehicle in front of him. Also, the trooper, utilizing his speedometer for two-tenths of a mile rather than the three-tenths required by the Vehicle Code, 75 Pa.S.C. § 3368, estimated that the defendant's speed was seventy miles per hour. The trial court ordered all the evidence obtained as a result of the stop to be suppressed after concluding that there was no probable cause to establish that the defendant was in violation of the Vehicle Code. The Supreme Court affirmed since under the evidence presented, there could be no violation of the Vehicle Code. Quoting *Commonwealth v. Swanger*, 453 Pa. 107, 112, 307 A.2d 875, 878 (1973), the Court stated, "[B]efore the government may single out one automobile to stop, there must be specific facts justifying this intrusion. To hold otherwise would be to give the police absolute, unreviewable discretion and authority to intrude into an individual's life for no cause whatsoever." *Whitmyer, supra*, 542 Pa. at 549, 668 A.2d at 1115.

¶ 5 The Supreme Court further held,

An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. Au-

---

1. The Commonwealth asserts it is appealing the trial court's ruling since it substantially handicaps or terminates the Commonwealth's case.

tomobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. *Delaware v. Prouse,* 440 U.S. 648, 662, 99 S.Ct. 1391, 1400–1401, 59 L.Ed.2d 660, 673 (1979) (footnote omitted).

*Id.,* 542 Pa. at 551–52, 668 A.2d at 1117.

▇▇▇ ¶ 6 With these principles in mind, we now turn to the relevant statute, use of multiple-beam road lighting equipment, which states:

(a) **Approaching an oncoming vehicle.**—Whenever the driver of a vehicle approaches an oncoming vehicle within 500 feet, the driver shall use the low beam of light.

(b) **Approaching a vehicle from rear.**—Whenever the driver of a vehicle *approaches* another vehicle from the rear within 300 feet, the driver shall use the low beam of light.

75 Pa.C.S. § 4306(a)(b) (emphasis added).

Consequently, in construing a statute to determine its meaning, the courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. *See also Commonwealth v. Harner,* 533 Pa. 14, 20, 617 A.2d 702, 705 (1992) ("When language of a statute is clear and unambiguous, it must be given effect in accordance with its plain and common meaning."). We will consider the language of a statute ambiguous "only where it will bear two or more meanings." *City of Philadelphia v. Schaller,* 148 Pa.Super. 276, 25 A.2d 406, 409 (1942) ... "Words having a precise and well-settled legal meaning must be given that meaning when they appear in statutes unless there is a clear expression of legislative intent to the contrary." *Commonwealth v. Hicks,* 365 Pa. 153, 154, 74 A.2d 178, 178 (1950). See also 1 Pa.C.S. § 1903(a).

*Commonwealth v. Thomas,* 743 A.2d 460, 464–65 (Pa.Super.1999).

¶ 7 Although the Commonwealth argues that the statute should be read to mean that any vehicle traveling behind another vehicle is required to dim its high beams whenever that vehicle is within 300 feet of the other vehicle, Appellee counters that the statute's words clearly state that unless the vehicle in the rear is approaching the vehicle in front of it, no violation of that statute can occur. In his case, Appellee maintains that he was not "approaching" the state police vehicle that had just passed him, but rather, it approached him, passed him, and continued driving at a speed greater than what Appellee was driving.

¶ 8 Pennsylvania State Policeman Michael Funk testified that on the evening in question, he was in a marked police car and was travelling behind another police vehicle and Appellee's vehicle. He estimated all three vehicles to be driving slightly under the speed limit, which was posted as fifty-five miles per hour. N.T., 3/29/00, at 8.

¶ 9 Trooper Funk eventually passed both vehicles and pulled in front of Appellee's vehicle, which appeared to have its high beams on. Almost immediately after the trooper pulled in front of Appellee's car, Appellee took the Delano Road exit. Trooper Funk continued to drive on Route

19 but radioed Trooper Michalak[2] that Appellee's high beams were activated. The trooper acknowledged that he was in front of Appellee's vehicle for approximately one-tenth of a mile before Appellee took the exit and that the time frame was only four or five seconds. *Id.* at 10–11.

¶ 10 Trooper Funk also informed the court that he was driving approximately sixty miles per hour when he passed Appellee's vehicle and that he continued at a speed in excess of Appellee's speed such that the gap between Appellee's vehicle and the trooper's vehicle was always widening. *Id.* 13.

¶ 11 State Policeman Joseph Yuran testified as follows. On the evening in question, he was a passenger in a state police cruiser driven by Trooper Michalak. Appellee's vehicle approached from the opposite direction. Trooper Yuran told the court that he personally did not observe Appellee committing *any* violations but that Trooper Michalak made a U-turn nevertheless since "we follow many vehicles." *Id.* at 17.

¶ 12 Trooper Yuran stated that they followed Appellee approximately five miles, or ten minutes, and did not observe *any* violations of the Motor Vehicle Code during this time. *Id.* Once Trooper Funk passed both vehicles and radioed to Trooper Michalak that Appellee's high beams were on, Appellee was instructed to pull his vehicle over. Trooper Yuran testified, "I wasn't planning on stopping the vehicle until advised of the high beam violation[.]" *Id.* 18–19. He further opined that other than when Trooper Funk pulled in front of Appellee's vehicle, there were no oncoming vehicles or any reason Appellee would have had to dim his headlights. *Id.*

¶ 13 In analyzing this issue, the suppression court looked to the wording of the underlying statute before it was amended in 1976. The pre–1976 language stated, *inter alia,*

(b) Whenever the operator of a vehicle approaches an oncoming vehicle within five hundred (500) feet *or follows or overtakes another vehicle within three hundred (300) feet,* such driver shall depress . . .

75 P.S. 1034 (emphasis added). The suppression court concluded that the Legislature clearly had chosen language that differed from the original wording of the statute and its subsequent amendments. Thus, the court found the Legislature deliberately changed the language. In ascribing a definition to the word "approaches," the suppression court noted that Black's Law Dictionary, Revised 4th Edition, and The Random House Dictionary of the English Language, 2nd Edition, define the word as "to come nearer in space." As the meaning of the word is plain and clear, the court found that Appellant could not be guilty of 75 Pa.C.S. § 4306 since the evidence demonstrated that Appellee was not "approaching" Trooper Funk's vehicle at any point. Therefore, the court held that none of the officers had probable cause to suspect that an actual violation of the Motor Vehicle Code had occurred. Although an actual violation need not be established, there must at least be a reasonable basis for the officer's belief in which to validate the stop. *Commonwealth v. Andersen, supra,* 753 A.2d at 1293.

¶ 14 Admitting there were no outward signs that Appellee was violating the Motor Vehicle Code, the officers nonetheless made a U-turn and began to follow Appellee for approximately five miles. During this approximately ten-minute period, the officers did not observe a violation of the

---

**2.** Trooper Michalak's first name is not identified in either the record or the briefs.

Motor Vehicle Code. It was only when Trooper Funk decided to drive beyond the posted speed limit in an attempt to pass Trooper Michalak and Appellee that a discovery of an alleged violation of the Motor Vehicle Code occurred. Trooper Funk testified that he continued at a speed in excess of Appellee's speed, and that he was only in front of Appellee's vehicle for four or five seconds before Appellee proceeded off an exit. Based on the record before us, we find the police officers did not have a reasonable suspicion that a violation of the Motor Vehicle Code occurred which would justify an investigatory stop.

¶ 15 Order affirmed.