**[J-93-2018] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 1 EAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered on 04/20/2017 at No. |
| | : | 1191 EDA 2016 (reargument denied |
| v. | : | 06/16/2017) affirming in part, |
| | : | reversing in part and remanding the |
| | : | Order entered on 03/18/2016 in the |
| ANGEL SANTIAGO, | : | Court of Common Pleas, Philadelphia |
| | : | County, Criminal Division,  at No. CP- |
| Appellant | : | 51-CR-0000903-2015. |
| | : | |
| | : | ARGUED:  December 6, 2018 |

**DISSENTING OPINION**

**JUSTICE WECHT**                                        **DECIDED:  June 18, 2019**

The Majority acknowledges the exclusionary rule, recognizing that "an identification made wholly as a result of a warrantless search . . . [is] tainted and inadmissible."  Maj. Op. at 27.  The Majority further observes that "eyewitness identification of a defendant occurring *prior* to illegal conduct by law enforcement may be admissible, if based on observations that are independent of the taint of the subsequent unconstitutional search."  *Id.* (emphasis in original).  I agree that, when a witness' ability to identify a suspect is separate and uninfluenced by any subsequent illegality, the witness' in-court identification of that suspect may be admissible.  Here, however, the Commonwealth failed to meet its burden to prove that such an independent basis existed. The Majority also misconstrues the burden of proof applicable to challenges asserting that evidence is fruit of the poisonous tree.  Moreover, in the context of the admissibility of identification testimony, the Majority's analysis, and particularly its reliance upon this

Court's decision in *Commonwealth v. Garvin*, 293 A.2d 33 (Pa. 1972), effectively allows the independent basis exception to the exclusionary rule to swallow the rule itself. For all of these reasons, I respectfully dissent.

The fruit of the poisonous tree doctrine, announced by the United States Supreme Court in *Wong Sun v. United States*, 371 U.S. 471 (1963), provides that evidence of any kind—physical or testimonial—obtained by police as a result of an unconstitutional search may not be used against the subject of the search. *See id.* at 485-86. To determine whether evidence must be excluded as fruit of an unlawful search, courts must consider "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488 (citation and internal quotation marks omitted).

In *United States v. Wade*, 388 U.S. 218 (1967), the High Court confronted the question of whether in-court identifications of a defendant by witnesses to a bank robbery were admissible following a pre-trial lineup conducted outside the presence of counsel. The Court concluded unequivocally that such in-court identification testimony is subject to the fruit of the poisonous tree doctrine. *See id.* at 241. The Court remanded the case to allow the government the "opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." *Wade*, 388 U.S. at 240. The Court rejected a *per se* exclusionary rule, but emphasized that a "rule limited solely to exclusion of testimony concerning identification at the lineup itself, without regard to the admissibility of the courtroom identification, would render the right to counsel an empty one." *Id.*[1]

---

[1] In a companion case argued and decided on the same day as *Wade*, the Court likewise held that "[t]he admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was

In *United States v. Crews*, 445 U.S. 463 (1980), the Court expounded further upon the application of the fruit of the poisonous tree doctrine to in-court identification testimony. Over a four day period, Crews robbed and harassed three women in the Washington Monument bathroom. Two of them gave the police descriptions of the perpetrator. A few days later, police observed an individual matching the victims' descriptions and detained him. The victims identified Crews in a photo array and lineup.

---

constitutional error." *See Gilbert v. California*, 388 U.S. 263, 272 (1967). Dissenters in *Wade* and *Gilbert* admonished the Court for imposing a burden upon the prosecution to prove by clear and convincing evidence that an in-court identification has an independent basis. Justice Hugo Black opined:

> I think the rule fashioned by the Court is unsound. The 'tainted fruit' determination required by the Court involves more than considerable difficulty. I think it is practically impossible. How is a witness capable of probing the recesses of his mind to draw a sharp line between a courtroom identification due exclusively to an earlier lineup and a courtroom identification due to memory not based on the lineup? What kind of 'clear and convincing evidence' can the prosecution offer to prove upon what particular events memories resulting in an in-court identification rest?

*Wade*, 388 U.S. at 248 (Black, J., concurring and dissenting). *See also id.* at 251 (White, J., concurring and dissenting) (positing that, for "all intents and purposes, courtroom identifications are barred if pretrial identifications have occurred without counsel being present[,]" because the "clear and convincing proof" required by the prosecution is "a heavy burden for the State and probably an impossible one").

As I discuss further below, and as scholars have acknowledged, these concerns have largely been mitigated by courts' routine allowance for admission of in-court identification testimony based upon the mere *opportunity* to observe the defendant during the crime. *See infra* at 10-13; Charles A. Pulaski, Neil v. Biggers: *The Supreme Court Dismantles the* Wade *Trilogy's Due Process Protection*, 26 Stan. L. Rev. 1097, 1100 (1974) ("[T]he heavy burden of proof on the prosecution to which the *Wade* dissenters objected does not really exist, at least in a functional sense[,]" because "many lower courts have found that such an independent basis exists if the witness enjoyed any opportunity whatsoever, no matter how meager, to observe the offender at the time of the crime.").

These out-of-court identifications were ultimately suppressed as fruit of the poisonous tree, because Crews was arrested without probable cause.[2]

Proceeding to address the admissibility of the witness' in-court identification, the *Crews* Court observed that, "[i]n the typical 'fruit of the poisonous tree' case . . . the challenged evidence was acquired by the police *after* some initial Fourth Amendment violation[.]" *Id.* at 471. However, the Court acknowledged as well that a witness' encounter with a suspect that occurs *prior to* a constitutional violation nonetheless may result in identification testimony that has been tainted by the violation, and thus may be suppressible:

> This is not to say that the intervening photographic and lineup identifications—both of which are conceded to be suppressible fruits of the Fourth Amendment violation—could not under some circumstances affect the reliability of the in-court identification and render it inadmissible as well. Indeed, given the vagaries of human memory and the inherent suggestibility of many identification procedures, just the opposite may be true.

*Id.* at 472-73 (footnote omitted). Relying upon the fact that the witness viewed Crews at close range for a period of five to ten minutes and that Crews matched the description given by the witness immediately following her assault, the Court concluded that "the witness' courtroom identification rested on an independent recollection of her initial encounter with the assailant, uninfluenced by the pretrial identifications[.]" *Id.* at 473 & n.18. The Court emphasized that the witness' "capacity to identify her assailant in court neither resulted from nor was biased by the unlawful police conduct committed long after she had developed that capacity." *Id.* at 473.

---

[2] At trial, the court permitted all three victims to identify Crews as their assailant. A jury convicted Crews of armed robbery of the first victim and acquitted him of all other charges. On appeal, the United States Court of Appeals for the D.C. Circuit ordered the suppression of the first robbery victim's in-court identification. This was the only identification challenged on appeal to the Supreme Court.

These precedents cannot fairly be considered without acknowledgment of the weight that jurors tend to place upon eyewitness identification testimony, as well as the growing awareness of the potential for error inherent in such testimony. *See* Sandra Guerra Thompson, *Judicial Blindness to Eyewitness Misidentification*, 93 Marq. L. Rev. 639, 643-49 (2009). Justice William Brennan recognized the importance of eyewitness identification testimony, positing that "[t]here is almost *nothing more convincing* than a live human being who takes the stand, points a finger at the defendant, and says 'That's the one!'" *Watkins v. Sowders*, 449 U.S. 341, 352 (1981) (Brennan, J., dissenting) (emphasis in original; internal citation omitted). The Court likewise has acknowledged that the circumstances under which an eyewitness observes a suspect often undermine the reliability of the testimony: "Usually the witness must testify about an encounter with a total stranger under circumstances of emergency or emotional stress. The witness' recollection of the stranger can be distorted easily by the circumstances or by later actions of the police." *See Mason v. Brathwaite*, 423 U.S. 98, 112 (1977).

Another scholar has noted that courts:

> discuss eyewitness memory as if it were a fixed image, like a photo or a video. However, as social scientists have demonstrated over many hundreds of studies, eyewitness memory is highly malleable and is nothing like a photo or a video. An eyewitness's memory must be carefully preserved or it can become contaminated. Each effort to test an eyewitness's memory will reshape that memory.

Brandon L. Garrett, *Eyewitness and Exclusion*, 65 Vand. L. Rev. 451, 485 (2012). The Supreme Court recognized as much in *Simmons v. United States*, 390 U.S. 377 (1968), cautioning against "improper employment of photographs by police," because the "witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." *Id.* at 383-84.

Without deploying a great deal of speculation, it is very difficult to conclude that Officer Sanchez' recollection of Santiago from the scene of the crime was not impermissibly influenced by his later viewing of the photograph that he recovered (unconstitutionally) from his warrantless (and concededly illegal)[3] search of Santiago's cell phone. Absent from the record is any indication that Officer Sanchez gave, or even had the ability to provide, a description of the driver prior to viewing the photograph. This is a key distinction between today's case and *Crews*. In *Crews*, prior to the illegal arrest and prior to the subsequent photo array and lineup (both of which the Court determined to be direct fruits of the unconstitutional arrest), two of the three victims provided almost identical descriptions of the perpetrator based upon their interactions with him during the offense. For this reason, the *Crews* Court determined that "the victim's capacity to identify her assailant in court neither resulted from nor was biased by the unlawful police conduct committed long after she had developed that capacity." *Crews*, 445 U.S. at 473. By contrast, the record here reveals no basis upon which this Court can reach a similar conclusion regarding Officer Sanchez' ability to identify Santiago.

Central to the Majority's framing of today's issue is its focus upon Officer Sanchez' opportunity to observe Santiago at the time of the crime. The Majority characterizes our inquiry as "whether the fruit of the poisonous tree doctrine warrants suppression of the in-court identification testimony by a police officer who observed a defendant prior to an illegal search of that defendant's cell phone." Maj. Op. at 9. The construction of this question, which differs textually from that upon which we granted review,[4] highlights my concerns with the Majority's analysis.

---

[3]     *See* Maj. Op. at 3 n.2.

[4]     We granted *allocatur* on the following question:

First and foremost, it is imperative to reiterate that in-court identification testimony indisputably is subject to a taint analysis under the fruit of the poisonous tree doctrine. *See Wade*, 388 U.S. at 241; *Gilbert*, 388 U.S. at 272-73. Yet, the Majority's analysis obscures the Commonwealth's burden to prove that an independent basis existed, and thereby weakens the protections that *Wade, Gilbert*, and *Crews* established. Specifically, the Majority maintains that Santiago did not challenge the "factual nexus" between the primary illegality—the warrantless search of Santiago's cell phone—and the in-court identification, and thus characterizes Santiago's claim as "ambiguous." Maj Op. at 29. The Majority goes on to characterize Santiago's argument as advocating that "Officer Sanchez' testimony was retroactively tainted by the 'flow'—the post-encounter unconstitutional search." *Id.* The Majority additionally opines that "[Santiago] did not challenge this original observation testimony as being infected by the taint of the

---

Is not the Superior Court's published opinion applying the fruit of the poisonous tree doctrine to in-court identification testimony inconsistent with controlling Fourth Amendment United States Supreme Court precedent and Article I, § 8, and does not its reliance on overly broad language in *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972), necessitate this Court's guidance and explicit rejection of *Garvin* and its progeny?

*Commonwealth v. Santiago*, 179 A.3d 455 (Pa. 2018). By pointing out the textual differences between the questions put by Santiago and the Majority, I do not intend to say that the Majority fails to address the issue upon which we granted *allocatur*. Rather, I note the contrast because the Majority's rephrasing of the issue seems to imply that the dispositive fact regarding suppression of in-court identification testimony is whether the witness had a prior opportunity to view the suspect. As I develop further below, this is not the proper inquiry. *See infra* at 10-13. Mere opportunity does not suffice. The Commonwealth must prove that the witness' "capacity to identify [the suspect] neither resulted from nor was biased by the unlawful police conduct." See *Crews*, 445 U.S. at 473.

unconstitutional search of [his] cell phone[.]" *Id.* at 33.[5, 6] For these reasons, the Majority concludes, Santiago did not meet his burden of proving that the in-court identification was tainted by the subsequent illegality. *See id.* at 29-30 ("[Santiago] failed to establish how the illegally searched cell phone tainted Officer Sanchez' initial observations of [Santiago], or to challenge the veracity of the officer's identification. As a result, we find [Santiago] did not meet his burden.").

The Majority's position on this point fails to account for Santiago's argument at the suppression hearing and also impermissibly shifts the burden away from the Commonwealth and onto the defendant. Once a motion to suppress is filed, it is the Commonwealth's burden to prove that the challenged evidence was not obtained in violation of the defendant's rights. *See Commonwealth v. Wallace*, 42 A.3d 1040, 1047-

---

[5] While the Majority asserts that I "read . . . arguments into Appellant's brief" in a way that "borders on the clairvoyant," Maj. Op. at 30 n.17, it is the Majority that reads out of this case Santiago's claims concerning "the inherent unreliability of eyewitness identification" and "a *Crews*-based argument regarding a lack of capacity to identify." *See id.* These issues are fairly encompassed within Santiago's brief before this Court. Santiago cites to multiple cases that highlight the "fallibility of eyewitness identification[,]" and he maintains that the court must engage in a "case by case factual determination" to determine whether eyewitness testimony is tainted by a subsequent illegality. *See* Brief for Santiago at 11, 12 n.1. In line with *Wade* and *Crews*, Santiago acknowledges that "in-court identification will not be suppressed if the Commonwealth can fulfil [*sic*] its burden to show in a particular case that the identification testimony was untainted, with an independent origin based on the witness' observations and memory from the incident itself." *Id.* at 16. Santiago argues that the Commonwealth failed to meet that burden here. *Id.* at 17-18.

[6] The Majority's characterization of Santiago's argument is also internally inconsistent. *Compare* Maj. Op. at 29 ("[Santiago]'s focus . . . has been that Officer Sanchez' in-court identification, even if initially founded solely on his encounter with [Santiago], was tainted by his post-encounter observation of [Santiago]'s photograph in the NCIC database.") *with id.* at 33 ("[Santiago] did not challenge this original observation testimony as being infected by the taint of the unconstitutional search of [his] cell phone[.]").

48 (Pa. 2012); Pa.R.Crim.P. 581(H).[7] The Majority discounts Santiago's stated position at the outset of the suppression hearing, wherein he argued that "both the in[-]court and out[-]of[-]court identification came directly from that warrantless search and the in[-]court identification would be considered fruits of the poisonous tree[.]" N.T., 2/19/2016, at 5. Santiago reiterated this argument at the end of the hearing. *See id.* at 39. Santiago advanced a claim that Officer Sanchez' ability to identify him in court was tainted by the unconstitutional search of his cell phone, a search that resulted in Officer Sanchez viewing the NCIC photograph. It was the Commonwealth's burden to prove, by clear and

---

[7] It is a hornbook principle in the law of criminal procedure that a defendant carries no burden at the suppression hearing. *See, e.g.,* 26A Standard Pennsylvania Practice 2d § 134.99 ("At a suppression hearing, the Commonwealth has the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights."). This Court has consistently held as much time and time again. *See, e.g., In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013); *Commonwealth v. Hamilton*, 673 A.2d 915, 916 (Pa. 1996); *Commonwealth v. DeWitt*, 608 A.2d 1030, 1031 (Pa. 1992); *Commonwealth v. Ryan*, 407 A.2d 1345, 1347 (Pa. Super. 1979). Without confronting this wealth of case law (which it somehow deems "generic"), the Majority invokes *Nardone v. United States*, 308 U.S. 338 (1939), to support its conclusion that Santiago had some "explanatory burden" during the suppression hearing to prove a factual nexus between the illegal search of his cell phone and Officer Sanchez' in-court identification testimony or that Officer Sanchez lacked the capacity to identify Santiago based upon his observations at the time of the crime. *See* Maj. Op. at 30 n.17. This upends the well-established burden of proof standard for suppression hearings. Indeed, my research reveals that this Court has never relied upon or cited *Nardone* for the Majority's premise, a premise that flouts the above-cited rule that a defendant bears no burden at the suppression hearing.

Santiago challenged the admission of Officer Sanchez' in-court identification as fruit of the unconstitutional search of Santiago's cell phone. At this point, Santiago met his "burden," although I am hesitant to characterize it as such inasmuch as Santiago carries no burden. At the suppression hearing, it was the Commonwealth's burden to prove that Officer Sanchez' testimony rested on an independent basis, separate from and untainted by the intervening illegality.

convincing evidence, that Officer Sanchez' in-court identification testimony was not unlawfully tainted by the illegal view of that NCIC photo.[8]

Santiago's argument that Officer Sanchez' ability to identify Santiago in court was tainted by the "flow" from the unconstitutional search of his Santiago's cell phone is not, as the Majority maintains, a "retroactive application of the fruit of the poisonous tree doctrine." *See* Maj. Op. at 31. Rather, Santiago's claim is entirely consistent with the Supreme Court's acknowledgment in *Crews* that an illegality occurring subsequent to a witness' observations of a suspect at the time of the crime may taint the witness' ability to identify the defendant, and thus may warrant suppression of an in-court identification based upon those observations. *See Crews*, 445 U.S. at 472 ("This is not to say that the intervening photographic and lineup identifications—both of which are conceded to be suppressible fruits of the Fourth Amendment violation—could not under some circumstances affect the reliability of the in-court identification and render it inadmissible as well."). This is so even though the witness had the opportunity to observe the suspect at the time of the crime. A taint examination is required.

This leads to my second concern with the Majority's broad framing of the issue in terms of a witness' observations: an opportunity to observe does not equate, *ipso facto*, to an independent basis. As established by *Crews*, an independent basis exists when a witness' "capacity to identify [the suspect] neither resulted from nor was biased by the unlawful police conduct." *See Crews*, 445 U.S. at 473. Emphasis upon general factors

---

[8]     It bears noting that this case comes before us following the trial court's order granting Santiago's motion to suppress. When reviewing such an order, we "consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the suppression hearing record as a whole," and when "the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Lukach*, 195 A.3d 176, 183 (Pa. 2018) (internal citations and quotation marks omitted).

such as lighting conditions, physical proximity between the witness and the suspect, and length of the encounter, while relevant to a court's analysis, are not dispositive on their own. A court's focus must remain upon whether a *particular* witness' identification "rested on an independent recollection of [the] initial encounter." *Id.* The term "independent" implies necessarily that the witness' ability to identify the suspect is separate from and uninfluenced by the subsequent illegal police conduct.

To allow an in-court identification to be admitted any time a witness observes a defendant, without accounting for the effects of improper identification techniques, is to ignore the realities of human memory. *See* Sandra Guerra Thompson, *Beyond a Reasonable Doubt? Reconsidering Uncorroborated Eyewitness Identification Testimony*, 41 U.C. Davis L.R. 1487, 1497-1500 (2008). Moreover, such an approach serves functionally to diminish, if not eliminate entirely, application of the exclusionary rule to in-court identifications. One cannot be an eyewitness, and thus be called to provide eyewitness identification testimony, without having observed the suspect at the time of the crime. I do not propose that a witness' observations at the time of the crime can never serve as an independent basis, as the *Wade* dissenters feared. For example, when a witness had a lengthy interaction with a suspect during the crime, or is familiar with the suspect from prior encounters, or provides a detailed description of the suspect, an independent basis may well exist. It is when these circumstances are absent, as they are here, that a witness' observations and memories are highly susceptible to distortion or other taint by virtue of a subsequent illegality.

There is no indication in the record that Officer Sanchez' opportunity to observe Santiago during the traffic stop provided a sufficient basis for identification that was independent of the officer's viewing of the illegally obtained photo. The encounter lasted only one to two minutes, and Officer Sanchez admitted that Santiago was not making eye

contact. At no point prior to viewing the photo did Officer Sanchez provide a description of the driver. Officer Sanchez offered no testimony upon which we may conclude that he had the ability, based solely upon his initial observations, to provide such a description.[9] An analysis of whether an independent basis exists for the witness' ability to identify the defendant must require more than determining whether the witness had the mere opportunity to observe the suspect. Otherwise, the independent basis exception to the exclusionary rule, in the context of identification testimony, will swallow the rule itself.

Such an outcome also undermines the deterrent purpose of the federal exclusionary rule. The Majority emphasizes, and I agree, that the primary purpose of the exclusionary rule for violations of the Fourth Amendment is to deter unlawful police behavior. *See* Maj. Op. at 17; *see also Crews*, 445 U.S. at 474 ("The exclusionary principle of *Wong Sun . . .* delimits what proof the Government may offer against the accused at trial, closing the courtroom door to evidence secured by official lawlessness.").[10] To allow an encounter to serve as the "independent basis" upon which an in-court identification could later stand, without regard for the influence of a subsequent illegality, is to encourage police officers at the initial encounter to engage in unlawful conduct (i.e. searching a cell phone without a warrant or warrant exception in order to ascertain the suspect's identity) without any consequences. *See Wade*, 388 U.S. at 240

---

[9] The Commonwealth's opportunity to test a witness' ability to identify a suspect is through identification procedures performed in accordance with constitutional protections. Where, as here, the Commonwealth violates the suspect's constitutional rights, and obtains an identification that is tainted by that illegality, the Commonwealth bears a heavy burden to prove that the witness' ability to identify the suspect can be disentangled from the taint caused by the constitutional violation.

[10] Recognizing that Article I, Section 8 of the Pennsylvania Constitution more zealously protects individual privacy rights than the Fourth Amendment to the United States Constitution, this Court has held that our exclusionary rule serves a separate purpose as well: to guard against unwarranted intrusions upon an individual's right to privacy. *See Commonwealth v. Edmunds*, 586 A.2d 887, 898-99 (Pa. 1991).

(recognizing that, unless the in-court identification is suppressed, a rule suppressing the out-of-court identifications would serve little purpose since "[t]he State may then rest upon the witnesses' unequivocal courtroom identifications").

Also absent from the Majority's reframing of the issue is any rigorous analysis of Santiago's request that we reconsider our prior decision in *Garvin*. Specifically, Santiago asks this Court to disavow *Garvin*'s grandiose pronouncement that, "No law abiding society could tolerate a presumption that but for the illegal arrest the suspect would never have been required to face his accusers. Thus, we conclude that the only effect of the illegal arrest was to hasten the inevitable confrontation and not to influence its outcome." *Garvin*, 293 A.2d at 37. The Majority declines to revisit *Garvin*. I would accept Santiago's invitation to do so. Courts (and citizens generally) should be highly skeptical of any intrusion upon an individual's constitutional rights, especially one that is premised upon jurists' incantations as to what a "law abiding society" can "tolerate." *Garvin*'s "law abiding" mantra essentially is an argument for nullification of the exclusionary rule, and it is entirely inconsistent with *Wong Sun*.[11]

Allow me to make a simple point, one that should not need to be repeated at this late date: To declare that preventing the evils of crime provides a justification for police officers to violate an individual's constitutional rights is to dismiss the protections enshrined in the Fourth Amendment and defy the purpose of the exclusionary rule. Landmark Fourth Amendment precedents of the Supreme Court of the United States repeatedly have rejected such results-oriented rationalization. *See Gilbert*, 388 U.S. at 273 ("[T]he desirability of deterring the constitutionally objectionable practice must prevail

---

[11] Perhaps the *Garvin* majority perceived *Wong Sun* to be insufficiently "law abiding." In any case, the United States Constitution is the "supreme Law of the Land." U.S. CONST. art. VI, cl. 2. It is that Charter, and not *Garvin*'s windy declaration, that we must hold paramount as we fulfill our own role within a "law abiding society."

over the undesirability of excluding relevant evidence."); *Mapp v. Ohio*, 367 U.S. 643, 659 (1961) ("The criminal goes free, if he must, but it is the law that sets him free."); *Olmstead v. United States*, 277 U.S. 438, 479 (1928) (Brandeis, J., dissenting) ("[I]t is also immaterial that the intrusion was in aid of law enforcement. . . . The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding."); *Weeks v. United States*, 232 U.S. 383, 393 (1914) ("The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land.").

I share the concerns raised by Justice Manderino in *Garvin*:

> the logical and dangerous result of the majority's opinion, that identification evidence following an illegal arrest does not fall within the exclusionary rule, is to grant law enforcement officers an unfettered discretion to illegally seize any person or any number of persons on mere suspicion, secure in the knowledge that if by chance a subsequent identification is obtained, the illegally seized individual will not have the right to suppress the tainted identification.

*Garvin*, 293 A.2d at 40 (Manderino, J., dissenting). These concerns are not limited to identifications following an illegal arrest. They apply with equal force in the context of an illegal search which results in an improper identification technique that taints a witness' capacity to identify the suspect.[12]

---

[12] I do not disagree with *Garvin*'s conclusion that an illegal arrest is not a bar to a subsequent prosecution. However, the question of what evidence is admissible during that prosecution is a separate inquiry. That a suspect, despite an illegal arrest or search, may inevitably be called to "face his accusers," *see Garvin*, 293 A.2d at 37, does not justify permitting eyewitness testimony that has been tainted by the illegal arrest or search.

There is no indication that Officer Sanchez "developed [a] capacity" to identify Santiago that was uninfluenced by the photo obtained as a direct result of the warrantless search of Santiago's cell phone.  *See Crews*, 445 U.S. at 473.  The Commonwealth failed to meet its burden of proving by clear and convincing evidence that the unlawful search did not contribute to Officer Sanchez' knowledge or the accuracy of his identification.  Therefore, Officer Sanchez' in-court identification "has been come at by exploitation" of the warrantless search of Santiago's cell phone.  *See Wong Sun*, 371 U.S. at 488.  As a result, the in-court identification must be suppressed.

Justice Donohue joins the dissenting opinion.