J-S28042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LEON L. OWENS, | |
| Appellant | No. 532 EDA 2015 |

Appeal from the Judgment of Sentence October 8, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos.: CP-51-CR-0005689-2013
CP-51-CR-0005691-2013
CP-51-CR-0005701-2013

BEFORE:  BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MAY 03, 2016**

Appellant, Leon L. Owens, appeals from the judgment of sentence imposed pursuant to his jury conviction of murder of the third degree, conspiracy to commit murder, and violation of the Uniform Firearms Act.  We affirm.

The trial court aptly set forth the factual and procedural history of this case, as follows:

> On April 11, 2012, at approximately 5:00 P.M., Markel Wright (Wright) was shot and killed at 53rd and Greenway Streets, in the City and County of Philadelphia.  [Wright] was leaving a corner store when the Appellant and others engaged in a shootout on the public street.

---

[*] Retired Senior Judge assigned to the Superior Court.

The shooting was a part of an ongoing dispute between the Backstreet Boys and the Greenway Boys. Earlier on the day of the shooting, a number of males who were associated with the Backstreet Boys armed themselves with guns and gathered at the home of Ms. Vicki Dunbar (Dunbar) at 1647 South Wilton Street. Appellant was present and was among the armed males. Terrence Matthews (Matthews) . . . placed a telephone call to Co-defendant Ronald Ockimey (Ockimey),[1] who lived in the northeast section of Philadelphia. Ockimey, who was related to some of the people who are a part of the Backstreet Boys, arrived at Dunbar's home with a friend. Both [Ockimey] and his friend were armed and they joined the other males who were already at the Wilton Street address. One of the males at the house, Lonnie, told the others who were gathered that two (2) males from the Greenway group named Tyreek Brown (Brown) . . . and Tyrell Artis (Artis) . . . had guns and had been giving Lonnie trouble.

Appellant said that the Backstreet group should go to Greenway Street and shoot Brown and Artis and shoot-up the rest of the block. Appellant, [] Ockimey[,] and another male walked to 53rd and Greenway Streets. On the way to Greenway Street, Appellant, Ockimey, plus the male[,] stopped inside the Trendsetters Bar, located at 53rd and Woodland Avenue. Appellant was a regular at this bar and was known to the bar owner, Anthony Taylor (Taylor). When the three (3) men left, they headed toward the intersection of 53rd and Greenway. Shortly after the three (3) males left the bar, Taylor heard shots and went outside to investigate. Taylor saw three (3) males, including Appellant, running down the street away from Greenway Street. Surveillance cameras located both inside and outside of the bar captured Appellant, [] Ockimey, and the third male entering and exiting the bar.

Warren Stokes (Stokes) plus three (3) males, including Wright[,] were inside of the 8 Brothers Food Market located at the intersection of 53rd and Greenway Streets when Appellant, [] Ockimey[,] and a third male approached the intersection.

_____

[1] Ockimey has filed a separate appeal in this matter at Superior Court docket number 452 EDA 2015.

- 2 -

Stokes exited the corner store while Wright and the two (2) males remained inside. Stokes was talking to someone outside of the store when he heard gunfire and saw Wright leave the store. Wright was struck by a bullet, which caused him to fall to the curb. Stokes went to assist [Wright] and called 911.

Wright was pronounced dead at 6:00 P.M. at the Hospital of the University of Pennsylvania. An autopsy performed by Assistant Medical Examiner Dr. Edwin Lieberman found that Wright was shot one (1) time in the right flank, and the bullet travelled upward through his body before exiting through the lower left eyelid. The cause of death was found to be a single gunshot wound, and the manner of death was found to be homicide. Seventeen (17) fired cartridge casings were recovered from the crime scene.

(Trial Court Opinion, 7/29/15, at 4-6) (quotation marks omitted).

Following this incident, Matthews gave a statement to police in which he confirmed that he had been at the meeting of the BackStreet Boys, which he, Appellant, and the other gang members attended to address the issue of Brown, Artis, and the entire rival street gang, the Greenway Boys. (*See* N.T. Trial, 6/05/14, at 53-56, 60). He told the police that Appellant urged his fellow armed gang members to confront the men and to "shoot[] up [Brown] and [Artis] as well as the block." (*Id.* at 56; *see id.* at 53-56, 60).

On June 11, 2014, the jury convicted Appellant of the aforementioned charges. The trial court sentenced him to an aggregate term of not less than twenty-five nor more than fifty years' imprisonment on October 8, 2014. Timely filed post-sentence motions were denied by operation of law

on February 19, 2015.  *See* Pa.R.Crim.P. 720(B)(3)(a).  Appellant appealed

on February 23, 2015.[2]

Appellant raises five questions for this Court's review:

I.    Is [Appellant] entitled to an arrest of judgment on all charges where the evidence as here, is insufficient to sustain the verdict?

II.   Is [Appellant] entitled to a new trial on all charges where as here the greater weight of the evidence does not support the verdict?

III.  Is [Appellant] entitled to a new trial as the result of court error where the court failed and refused to charge on involuntary manslaughter and all where the charge was necessary pursuant to the evidence?

IV.   Is [Appellant] entitled to a new trial where the court erred when it failed to give an instruction on transferred intent as it would apply to a fact pattern of self-defense, to wit, where [Appellant] acted in self-defense but an unintended person was shot and killed?

V.    Is [Appellant] entitled to a new trial as the result of court error where the court found [] Brown to be unavailable when the Commonwealth had not sustained its burden of demonstrating same and where the record below did not reflect that a full and fair hearing had taken place at a preliminary hearing?

(Appellant's Brief, at 3) (unnecessary capitalization and quotation marks

omitted).

In his first issue, Appellant challenges the sufficiency of the evidence

supporting his convictions of murder in the third degree and conspiracy to

_____

[2] Appellant timely filed a Rule 1925(b) statement on March 23, 2015.  *See* Pa.R.A.P. 1925(b).   The court filed an opinion on July 29, 2015.  *See* Pa.R.A.P. 1925(a).

commit murder. (*See id.* at 3, 10-16). Specifically, Appellant argues that the Commonwealth failed to prove that he was not acting in self-defense or that there was an agreement to commit murder. (*See id.* at 10-16). This issue lacks merit.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa. Super. 2014) (citation omitted).

"Pursuant to the Pennsylvania Crimes Code, '[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being.'" *Commonwealth v. Thompson*, 106 A.3d 742, 756 (Pa. Super. 2014) (quoting 18 Pa.C.S.A. § 2501(a)). "[T]hird[-]degree murder occurs when a person commits a killing

which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Id.* at 757 (citation omitted).

> Malice is defined as: wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured[.] Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. Malice may be inferred by considering the totality of the circumstances.

*Id.* (citations omitted).

To establish criminal conspiracy, the Commonwealth must prove that a defendant:

> (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy.
>
> Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Additionally:
>
>> An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Commonwealth v. Jones*, 874 A.2d 108, 121-22 (Pa. Super. 2005) (citations and quotation marks omitted).

Finally, to prevail on the affirmative defense of self-defense, a defendant must establish:

(a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat. [*See*] 18 Pa.C.S.[A.] § 505. Although the defendant has no burden to prove self-defense . . . before the defense is properly in issue[] there must be some evidence, from whatever source, to justify such a finding. Once the question is properly raised, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense. The Commonwealth sustains that burden of negation if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty to retreat or avoid the danger.

*Commonwealth v. Mouzon*, 53 A.3d 738, 740-41 (Pa. 2012) (case citations, quotation marks, and footnotes omitted).

Here, in explaining its reasoning for finding the evidence sufficient to support the third-degree murder conviction, the court explained:

In the instant case, the Commonwealth presented circumstantial evidence through the testimony of its witnesses and surveillance video to establish that the Appellant and the other males conspired to commit the crime of [m]urder, and that Appellant violated the Uniform Firearms Act. In a statement to police, Matthews said that on the day of the incident Appellant and [] Ockimey both had guns at Dunbar's house and were showing the guns to each other. (*See* N.T. Trial, 6/05/14, at 53). Matthews also told police that Appellant suggested the group go to 53rd and Greenway Streets, and that the Appellant, [] Ockimey[,] and others talked about going there and shooting Brown, Artis[,] and shooting-up the block. (*See id.* at 53-56).

- 7 -

After Appellant made the suggestion to go confront the Greenway Boys and discussed it with [] Ockimey, the group then collectively went to [that location armed with guns].

Taylor testified that Appellant was at the Trendsetters Bar with other males just prior to the shooting[.] (**See id.** at 198-99, 202). . . . Additionally, Appellant's presence in the area was recorded by video surveillance cameras located at the bar[, which recorded him and the other males inside the bar, walking on 53rd Street toward Greenway, and running away after the shots were fired]. (**See id.** at 200, 202-04; N.T. Trial, 6/06/14, at 75). [] Ockimey admitted to shooting at Wright four to five (4-5) times. (**See** N.T. Trial, 6/06/14, at 72).

The contents of Matthews' statement established that Appellant was a conspirator in the [m]urder of [Wright]. Appellant exhibited malice when he went to 53rd and Greenway to indiscriminately shoot whoever was there. This shooting on a public street resulted in the death of Wright and fulfilled the elements of [t]hird [d]egree [m]urder. . . . The jury was instructed that they could believe all, part, or none of the testimony. After hearing the evidence presented at trial however, the jury proceeded to find Appellant guilty of [t]hird [d]egree [m]urder [and] [c]onspiracy . . . The jury was also instructed on [v]oluntary [m]anslaughter and self-defense, but they were not persuaded. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence is sufficient to find the Appellant guilty of the aforementioned acts.

(Trial Ct. Op., at 8-9) (citation formatting and some citations provided).

After our independent review of the record, we agree with the trial court that the Commonwealth produced sufficient evidence that the armed Appellant conspired with other individuals to ambush and shoot members of the Greenway gang, purposely went to their suspected location, and then fired on them, to support the elements of murder of the third degree and conspiracy. **See Harden**, **supra** at 111.

- 8 -

Moreover, Appellant's argument that the Commonwealth failed to provide sufficient evidence to create reasonable doubt of his self-defense claim, (**see** Appellant's Brief, at 12-15), fails where Appellant "was [not] free from fault in provoking the difficulty which culminated in the slaying[.]" **Mouzon**, **supra** at 740 (citations and footnote mitted). In fact, not only did Appellant "violate[] a duty to . . . avoid the danger," **id.** at 740-41 (citation omitted), he created the situation when he conspired with others to ambush the Greenway Boys in order to "shoot [them] and the block up," and then went to their location armed with guns in furtherance of the plan. (N.T. Trial, 6/05/14, at 53-54; **see also id.** at 56, 198-200; N.T. Trial, 6/06/14, at 75, 113-16). Therefore, we conclude that the trial court properly found that the Commonwealth provided sufficient evidence to disprove Appellant's claim of self-defense. **See Harden**, **supra** at 111. Appellant's first issue does not merit relief.

In Appellant's second issue, he maintains that the trial court erred in denying his motion for a new trial because "the greater weight of the evidence does not support the Commonwealth's verdict." (Appellant's Brief, at 17 (unnecessary capitalization and emphasis omitted); **see id.** at 17-19). Appellant's issue lacks merit.

Our standard of review of a challenge to the weight of the evidence is well-settled:

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or

because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a **palpable abuse of discretion** will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

*Commonwealth v. Morales*, 91 A.3d 80, 91-92 (Pa. 2014), *cert. denied*, 135 S.Ct. 1548 (2015) (citations omitted; emphasis in original).

Here, Appellant has not argued or demonstrated that the trial court palpably abused its discretion when it denied his motion for a new trial on the basis of the weight of the evidence. He merely claims that the trial record "was full of discrepancies" and the jury was left to guess at what occurred. (Appellant's Brief, at 18). Thus, Appellant has failed to advance an argument that invokes the appropriate standard of review. *See Morales*, *supra* at 91-92.

Moreover, our independent review of the record reveals that the trial court properly viewed the issue as one of credibility, which the jury was free

to resolve in the Commonwealth's favor, and determined that the verdict "[did] not shock the conscience." (Trial Ct. Op., at 10; *see id.* at 11). Therefore, we conclude that the trial court did not palpably abuse its discretion in deciding the weight of the evidence issue, *see Morales*, *supra* at 91-92, and Appellant's second claim does not merit relief.

In Appellant's third and fourth issues, he argues that the trial court erred in denying his request for an involuntary manslaughter jury instruction and a transferred intent charge based on *Commonwealth v. Fowlin*, 710 A.2d 1130 (Pa. 1998).[3] (*See* Appellant's Brief, at 19-25). These issues are waived.

_____

[3] In *Fowlin*:

> Fowlin was accosted by three men who assaulted him with pepper spray and simultaneously drew a handgun. Fowlin assumed, with reason, that they intended to kill or seriously injure him. He acted instinctively and within our law in defending himself.

*Fowlin*, *supra* at 1134.

The Pennsylvania Supreme Court held:

> Because the crimes with which Fowlin was charged[, reckless endangerment and aggravated assault,] require proof of recklessness, and because . . . a claim of self-defense, if believed, negates any element of recklessness, Fowlin, *a fortiori*, cannot be found to have been reckless, for the Commonwealth admits that his actions were justified. If he cannot be held to have been reckless, he cannot be convicted of aggravated assault or reckless endangerment. . . .

*(Footnote Continued Next Page)*

- 11 -

"A specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver." ***Commonwealth v. Moury***, 992 A.2d 163, 178 (Pa. Super. 2010) (citations omitted). "[T]he mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." ***Commonwealth v. Hitcho***, 123 A.3d 731, 756 (Pa. 2015) (citation omitted); ***see also*** Pa.R.Crim.P. 603, 647(C).

In this case, when the trial court denied Appellant's request for an involuntary manslaughter instruction and a charge based on ***Fowlin***, he failed to object. (***See*** N.T. Trial, 6/06/14, at 219-20; N.T. Trial, 6/10/14, at

---

*(Footnote Continued)* ────────────

***Fowlin***, ***supra*** at 1133. The Court limited its holding, however, by observing:

> [I]f the victim acts outside of the parameters established by the law, then his act is not justified and he may be prosecuted for injury to bystanders or others which he may inflict. . . . If . . . [he] did not reasonably believe deadly force was necessary; he provoked the incident, or he could retreat with safety, then his use of deadly force in self-defense was not justifiable and he may be prosecuted for injuries or death he inflicts on the assailants or on bystanders. . . .

***Id.*** at 1134.

211, 275-76). Therefore these issues are waived.[4, 5] **See Hitcho**, **supra** at 756; **Moury**, **supra** at 178.

In his fifth issue, Appellant claims that "[t]he [t]rial [c]ourt . . . erred when it permitted the testimony of a witness who it apparently believed was unavailable[,] but where there was no showing of same by the Commonwealth." (Appellant's Brief, at 29). Specifically, Appellant argues that the trial court erred in finding that the Commonwealth made a good faith effort to locate Brown. (**See id.** at 25-29). Appellant's issue does not merit relief.

_____

[4] We also observe that Appellant's Rule 1925(b) statement did not raise an issue alleging trial court error in denying his request for the involuntary manslaughter instruction. (**See** Appellant's Rule 1925(b) Statement, 3/23/15, at 1-4). Accordingly, we deem Appellant's fourth issue waived on this basis as well, and we lack the authority to review it. **See Commonwealth v. Elia**, 83 A.3d 254, 263 (Pa. Super. 2013), *appeal denied*, 94 A.3d 1007 (Pa. 2014); **see also** Pa.R.A.P. 1925(b)(4)(vii).

[5] Moreover, based on our independent review of **Fowlin** and this case, including the trial court's jury charge, we would conclude that it did not abuse its discretion or commit an error of law in denying Appellant's jury instruction requests. **See Commonwealth v. Johnson**, 107 A.3d 52, 89 (Pa. 2014), *cert. denied*, 136 S.Ct. 43 (2015) ("A trial court's denial of a request for a jury instruction is disturbed on appeal only if there was an abuse of discretion or an error of law.") (citation omitted). The evidence produced did not support an involuntary manslaughter charge. Also, the trial court properly found that Appellant's attempt to create a jury instruction on the basis that **Fowlin** somehow negated his liability for third degree murder was unavailing where the holding in **Fowlin** applied to a **victim** who acted recklessly in justifiable self-defense, not to an active participant who acted with malice and provoked the incident. (**See** N.T. Trial, 6/10/14, at 207-11); **see also Fowlin**, **supra** at 1134. Therefore, even if properly preserved, this argument would not merit relief.

Our standard of review of this matter is well-settled. "It is within the discretion of the trial court to determine what constitutes a good faith effort to locate a missing witness, and the decision of the court will not be overturned absent an abuse of discretion." *Commonwealth v. Douglas*, 737 A.2d 1188, 1196 (Pa. 1999), *cert. denied*, 530 U.S. 1216 (2000) (citations omitted).

> Pursuant to 42 Pa.C.S.A. Section 5917:
>
> Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards . . . cannot be found, . . . notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue. . . .

42 Pa.C.S.A. § 5917; *see also* Pa.R.E. 804.

"A witness who cannot be found at the time of trial will be deemed unavailable only if a good-faith effort to locate the witness and compel his attendance at trial has failed." *Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 541 (Pa. Super. 1995), *appeal denied*, 676 A.2d 1195 (Pa. 1996). (citations and internal quotation marks omitted). Further, "[t]he extent to which the Commonwealth must go in order to produce an absent witness is a question of reasonableness." *Id.* (citation and internal quotation marks omitted).

In this case, the trial court addressed this issue as follows:

- 14 -

A full hearing was conducted prior to granting the Commonwealth's unavailability motion wherein the Commonwealth presented four (4) witnesses who each confirmed that Brown could not be located. (*See* N.T. Trial, 6/09/14, at 15-56). Although Brown attended the first day of trial, he failed to attend the balance of trial. (*See id.* at 17, 20). A bench warrant was issued by [the trial c]ourt[,] which was distributed to tactical teams where Brown lived, 12th District personnel, and the Criminal Intelligence Unit. (*See id.* at 26-27). Brown's cell phone was tracked by [global positioning system (GPS) satellites] with negative results, the area hospitals and Medical Examiner's Office were checked, and Brown's mother testified that a police officer visited [and searched] her home looking for Brown almost every day. (*See id.* at 27-28, 38). The [trial c]ourt was satisfied that the Commonwealth put forth good faith efforts to locate Brown, to no avail. Brown's statement was thereafter admitted because Appellant's prior counsel had an adequate opportunity to cross-examine Brown at the [p]reliminary [h]earing.[6] At that time, Brown was also cross-examined by [] Ockimey's counsel as well.

(Trial Ct. Op., at 12-13) (citation formatting and some citations provided; some citations omitted).

Our independent review of the record supports the findings of the trial court and its determination that the Commonwealth proved that it made a good faith effort to locate Brown. The Commonwealth presented the testimony of multiple witnesses who testified that several police officers, law

---

[6] Appellant does not argue that the court erred in finding that he had a full and fair opportunity to cross-examine Brown at the preliminary hearing, although phrased that way in his statement of questions involved. (*See* Appellant's Brief, at 3, 25-29). Therefore, any challenge on this basis is waived and we decline to address it. *See Commonwealth v. Hawkins*, 810 A.2d 668, 672 (Pa. Super. 2002), *appeal denied*, 827 A.2d 430 (Pa. 2003) (waiving and declining to review issue raised in statement of questions involved where not addressed in argument section of brief).

enforcement units, and GPS satellites were involved in the search for Brown.[7] Therefore, we conclude that the trial court properly exercised its discretion when it granted the Commonwealth's motion *in limine* and found that Brown was unavailable to testify at trial. ***See Douglas***, ***supra*** at 1196; ***see also Cruz-Centeno***, ***supra*** at 541. Appellant's fifth issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2016

_____

[7] Further, Appellant's argument that Brown, as a "lay person" did not realize the trial subpoena was "ongoing" lacks merit. (Appellant's Brief, at 28). We first observe that whether Brown knew the nature of the subpoena is immaterial to the question of whether the Commonwealth made reasonable good faith efforts in locating him. Moreover, the record reflects that the Commonwealth's counsel testified that, on the first day of trial, she told Brown the subpoena was continuing and that he was to appear every day unless she expressly advised him otherwise. (***See*** N.T. Trial, 6/09/14, at 18); (Appellant's Brief, at 28). Therefore, this argument is belied by the record.